E-FILED
Wednesday, 23 December, 2020  06:51:25 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT V

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| DURASYSTEMS BARRIERS INC., a Canadian corporation, | Case No. 1:19-cv-01388-SLD-JEH |
| Plaintiff, | **PLAINTIFF'S FINAL ENFORCEABILITY AND VALIDITY CONTENTIONS** |
| v. | **District Judge Sara Darrow Magistrate Judge Jonathan E. Hawley** |
| VAN-PACKER CO., an Illinois corporation, JEREMIAS, INC., a Georgia corporation, | |
| Defendants. | |

Pursuant to Local Patent Rule ("LPR") 3.2 for the Northern District of Illinois, and the Proposed Discovery Plan (Dkt. No. 14) adopted by the Court (*see* Dkt. No. 15) as modified by the agreement of the parties, Plaintiff DuraSystems Barriers Inc. ("DuraSystems" or "Plaintiff"), through the undersigned counsel, hereby provides its Final Enforceability and Validity Contentions.

## **INTRODUCTION**

These Final Enforceability and Validity Contentions are based on the information currently available to DuraSystems. Discovery is ongoing, and DuraSystems expressly reserves the right to amend and/or supplement these Final Enforceability and Validity Contentions in accordance to the governing rules if it discovers additional information relevant to these contentions during discovery.

1

## **OBJECTIONS TO DEFENDANTS' RESERVATIONS**

Plaintiff objects to all attempts by Defendants to reserve rights to amend its non-infringement, invalidity, and unenforceability beyond those allowed under the relevant rules and interpretive case law.  Plaintiff specifically objects to Defendants' position that "the prior art provided in Defendants' contentions are intended to be exemplary, not exhaustive. … Defendants reserve the right to rely on uncited portions of the identified prior art to establish the invalidity of the Asserted Claims."  A primary purpose of exchanging contentions is to "prevent 'shifting sands' gamesmanship in claim construction."  *Oil-Dri Corp. of Am. V. Nestle Purina Petcare Co.,* No. 1:16-cv-09179, 2017 WL 1862646, at *2 (N.D. Ill. May 9, 2017) (Kendall, J.); *see also* LPR 2 cmt. ("[T]he purpose of these provisions [LPR 2.2-2.5] is to require the parties to identify the likely issues in the case, to enable them to focus and narrow their discovery requests.").

Plaintiff expressly objects to any attempt by Defendants to later amend its invalidity contentions or otherwise argue that any claim elements are taught by any disclosure in any prior art that is not cited as teaching the claim element in Defendants' invalidity claim chart, and that is materially different from the arguments set forth in those claim charts.  To that end, Plaintiff also objects to any attempt by Defendants to argue that any claim element is taught or rendered obvious by any of the alleged prior art references, "treatises, published industry standards, and other similar documents," "the patent prosecution history for the '569 patent, and related patents and/or patent applications" not expressly cited in Defendants' invalidity claim charts as teaching the pertinent claim element.

Plaintiff also expressly objects to Defendants' position that "[t]he obviousness combinations of references provided below under 35 U.S.C. § 103 are merely exemplary and are not intended to be exhaustive.  Additional obviousness combinations of the references identified below are possible, and Defendants reserve the right to use any such combinations in this litigation. … Defendants reserve the right to identify other references, the addition of which may make obvious the allegedly missing limitations to the disclosed device or method of operation. To the extent that any element of the Asserted Claims is not found in the references cited in the attached charts, the references cited in Table I may be used to render such claims anticipated and/or obvious."  For combinations of prior art that Defendants allege render the claims obvious, LPR 2.3(b)(2) expressly required Defendants to "identify each such combination, and the reasons to combine such items."  To the extent that Defendants have made the strategic decision to not identify combinations of prior art as required by LPR 2.3(b)(2), Plaintiff objects to Defendants arguing undisclosed combinations of reference in Table I of Defendants invalidity contentions. Further, LPR 2.3(b)(3) required Defendants to provide "a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found…."  To the extent Defendants have made the strategic decision to withhold such a claim chart for references identified in Table I of its invalidity contentions, Plaintiff objects to Defendants asserting that such references teach or render obvious any claim element.

## OBJECTIONS TO DEFENDANTS' OVERVIEW OF THE INVALIDITY CHALLENGES

Plaintiff objects to Defendants position in the Overview of the Invalidity Challenges in which Defendants state that "one or more of the principles enumerated by the United States Supreme Court in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 389 (2007) apply to the Asserted

3

Claims[.]" Plaintiff also objects to Defendants' listing of five alleged "reason[s] to modify each reference or to combine references…." The LPRs expressly prohibit such "boilerplate" language that is not applied to any particular reference, combination of references, and Asserted Claim. Plaintiff objects to any attempt by Defendants to rely on any *KSR* principles or the enumerated reasons to modify or combine references beyond those specifically argued in the claim charts attached to Defendants' invalidity contentions.

## OBJECTIONS TO PRIOR ART BASED DEFENSES

LPR 2.3(b)(1) limits the Defendants' invalidity contentions based on prior art to twenty five (25) references. DuraSystems objects that the table of prior art references in Defendants' Final Contentions identify thirty one references, which exceeds the limit set forth LPR. 2.3(b)(1).

LPR 2.3(b)(2) requires, "for each item of prior art, a detailed statement of whether it allegedly anticipates or renders obvious each asserted claim. If a combination of items of prior art allegedly makes a claim obvious, the Invalidity Contentions must identify each such combination, and the reasons to combine such items[.]" DuraSystems objects to each prior art reference not specifically identified as being anticipatory, and to each combination of prior art references not specifically identified.

LPR 2.3(b)(3) requires, "a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found,…" DuraSystems objects to each prior art reference identified in the Final Contentions for which Defendants have not provided a claim chart as required by LPR 2.3(b)(2).

LPR 3.1(b) states that Defendants "may rely on more than twenty-five (25) prior art references only by order of the Court upon a showing of good cause and absence of unfair

prejudice to opposing parties. For each claim alleged to be invalid, the Final Unenforceability and Invalidity Contentions are limited to four (4) prior art grounds per claim and four (4) non-prior art grounds. No claim asserted to be infringed shall be subject to more than eight (8) total grounds per claim." DuraSystems objects that the Final Contentions assert up to seven different grounds for invalidity based on prior art, which exceeds the allotted four grounds.

## OBJECTIONS TO NON-PRIOR ART BASED DEFENSES

LPR 3.1(b) states, "Contentions are limited to four (4) prior art grounds per claim and four (4) non-prior art grounds. No claim asserted to be infringed shall be subject to more than eight (8) total grounds per claim." DuraSystems objects that the Final Contentions assert more than four grounds for invalidity and unenforceability that non-prior art based.

## RESPONSE TO INVALIDITY FOR "OBVIOUSNESS-TYPE" DOUBLE PATENTING

The '569 patent is not invalid for double patenting in view of U.S. Patent No. 9,074,788 ("the '788 patent) because the claims of the '569 patent are patentably distinct over the claims of the '788 patent at least because the claim elements [1E] – [1H], [10E] – [10H], [13], [16D] – [16H] and [20] are not claimed in the claims of the '788 patent.  Additionally, claims 1 of the '788 patent requires "said field assembly junction comprising a plurality of holes in each of said first and said exterior flanges, said plurality of holes being in alignment on said first and said exterior flanges, and being configured to receive a detachable fastener" that is not required in claim 1 of the '569 patent. Claim 9 of the '788 patent requires "wherein said first flange connector comprises a plurality of holes configured to be aligned with a plurality of holes on said first exterior flange connector, and said second flange connector comprises a plurality of holes

configured to be with a plurality of holes on said second exterior flange connector, and being

configured to receive a detachable fastener" not required by claims 10 and 16 of the '569 patent.

## **RESPONSE TO UNEFORCEABILITY CONTENTION**

The '569 patent is not unenforceable due to inequitable conduct for failure to disclose the

SMACNA reference to the PTO. First, the SMACNA reference is not "but for" material because

it does not pertain to fire-rated ducts, is cumulative of the references submitted and considered

by the PTO during prosecution of the '569 patent, does not teach an exhaust duct system, and

does not disclose the claim elements identified in the claim chart attached hereto as Exhibit H.

Second, there was no intent by any party with a duty to disclose information to the PTO in

connection with the prosecution of the '569 patent to deceive the PTO by not disclosing the

SMACNA Manual.

## **RESPONSE TO PRIOR ART BASED INVALIDITY CONTENTIONS**

DuraSystems responds to the claim charts in Exhibits B – H of Defendants' Final

Contentions in the attached Exhibits B – H, which exhibits correspond with Defendants'

exhibits.

With regard to Defendants' contentions that any claim is invalid for lack of written

description, indefiniteness, and/or lack of enablement, the LPRs do not require a response to

these defenses.  Plaintiff reserves all arguments that each claim term and/or element meets the

written description requirement, is definite, and enabled by the '569 patent's disclosure as

understood by a person of ordinary skill in the art of the '569 patent.


DATED this 6th day of November, 2020.

WORKMAN NYDEGGER

*/s/Brian N. Platt*
Brian N. Platt
Chad E. Nydegger
60 East South Temple, Suite 1000
Salt Lake City, UT  84111
(801) 533-9800
bplatt@wnlaw.com
cnydegger@wnlaw.com

Matthew V. Topic
LOEVY & LOEVY

311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
foia@loevy.com


Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of November, 2020, I caused the foregoing

**PLAINTIFF'S FINAL ENFORCEABILITY AND VALIDITY CONTENTIONS** to be

served via email to the following:


Katherine L. Allor
James A Shimota
K&L Gates LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Katy.allor@klgates.com
Jim.shimota@klgates.com

Attorneys for Defendants


*/s/Brian N. Platt*

8

# EXHIBIT B

| '569 Patent | Callan '054 Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | Callan '054 does not teach a fire-rated exhaust duct assembly.  Callan '054 pertains to "conduits for conveying air in air-conditioning, ventilating and heating systems and the like." (Callan '054, 1:15-23.) |
| two or more exhaust duct modules; | Callan '054 does not teach exhaust duct modules.  Callan '054 pertains to "conduits for conveying air in air-conditioning, ventilating and heating systems and the like." (Callan '054 1:15-23.) Consequently, the conduits of Callan '054 are air-conditioning, ventilating and heating conduits, not exhaust duct modules. |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Callan '054 does not teach exhaust duct modules, as explained above.<br><br>Defendants' Initial Invalidity Contentions do not identify any teaching of an "inner duct liner" or "a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material" in Callan '054. Instead, Defendants' Initial Invalidity Contentions merely recite the claim language, quote a number of passages from Callan '054, and reproduce one of its figures without identifying what in in any of those passages or figure Defendants allege teaches these elements. Callan '054 does not teach an inner duct liner or the claimed void: |



Insulation 4 is exposed with no inner duct liner.

*See also,* Callan '054, 4:10-12 ("The insulating material is on the inside of the conduit lining the metal exterior and protected by it.")

| | |
|---|---|
| and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Callan '054 does not disclose an "inner duct liner" and a "void," and Defendants' have not identified any teaching of an "inner duct liner" and a "void," as explained above, Callan '054 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship . . . ." The "thermal spacer" Defendants identify in the Initial Invalidity Contentions does not maintain a "spaced relationship" between an "inner duct liner and said outer casing," and thus does not teach this claim element. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this |

| | |
|---|---|
| said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants have not identified any such teaching of an "inner duct liner," as explained above, Callan '054 also does not teach a "said first exterior flange connector being joined directly to one end of said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner duct liner," as explained above, Callan '054 also does not teach a "said second exterior flange connector being joined directly to one end of said inner duct liner." |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | Callan '054 does not teach "first and second exterior flange connectors," and Defendants have not identified any teaching of the claimed "first and second exterior flange connectors," as explained above. Because Callan '054 does not teach the claimed "first and second exterior flange connectors," Defendants have also not identified, and Callan '054 does not teach "first and second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run." |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | Callan '054 does not teach a "joint encasement section." The channel strips 7 Defendants identify as teaching this element do not "encase" a "junction" as claimed. |
| 3.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct | Callan '054 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. |

| | |
|---|---|
| modules have a generally rectangular cross-section. | |
| 6.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Callan '054 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. Whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner duct liner," as explained above, Callan '054 also does not teach an inner duct liner "formed from a metallic material, and … having a thickness to provide a specified fire rating." |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br>    an inner duct liner formed with a generally rectangular cross-section | Callan '054 does not teach a fire-rated exhaust duct assembly or exhaust duct modules as set forth above.  Callan '054 pertains to "conduits for conveying air in air-conditioning, ventilating and heating systems and the like." (Callan '054, 1:15-23.) Consequently, the conduits of Callan '054 are air-conditioning, ventilating and heating conduits, not exhaust duct modules.<br><br>Defendants' Initial Invalidity Contentions do not identify any teaching of an "inner duct liner" in Callan '054. Instead, Defendants' Initial Invalidity Contentions merely recite the claim language, quote a number of passages from Callan '054, and reproduce two of its figures without identifying what in in any of those passages or figures Defendants allege teaches this element. Callan '054 does not teach an inner duct liner: |



Insulation 4 is exposed with no inner duct liner.

*See also,* Callan '054, 4:10-12 ("The insulating material is on the inside of the conduit lining the metal exterior and protected by it.")

| | |
|---|---|
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Callan '054 does not teach exhaust duct modules, as explained above.<br><br>Defendants' Initial Invalidity Contentions do not identify any teaching of an "inner duct liner" or "a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material" in Callan '054. Instead, Defendants' Initial Invalidity Contentions merely recite the claim language, quote a number of passages from Callan '054, and reproduce one of its figures without identifying what in in any of those passages or figure Defendants allege teaches these elements. Callan '054 does not teach an inner duct liner or the claimed void: |



Fig-1

Insulation 4 is exposed with no inner duct liner.

*See also,* Callan '054, 4:10-12 ("The insulating material is on the inside of the conduit lining the metal exterior and protected by it.")

| | |
|---|---|
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Callan '054 does not disclose an "inner duct liner" and a "void," and Defendants' have not identified any teaching of an "inner duct liner" and a "void," as explained above, Callan '054 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship . . . ." The "thermal spacer" Defendants identify in the Initial Invalidity Contentions has no relationship with an "inner duct liner," does not maintain a "spaced relationship" between an "inner duct liner and said outer casing," and thus does not teach this claim element. Plaintiff's response to Defendants' reliance on SMACNA with regards to this element is addressed below, and incorporated herein by reference. Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with |

| | |
|---|---|
| | regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants have not identified any such teaching of an "inner duct liner," as explained above, Callan '054 also does not teach a "said first exterior flange connector being joined directly to one end of said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner duct liner," as explained above, Callan '054 also does not teach a "said second exterior flange connector being joined directly to one end of said inner duct liner." |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Callan '054 does not teach "first and second exterior flange connectors," and Defendants have not identified any teaching of the claimed "first and second exterior flange connectors," as explained above. Because Callan '054 does not teach the claimed "first and second exterior flange connectors," Defendants have also not identified, and Callan '054 does not teach "first and second exterior flange connectors being configured to be field attachable to coupe another exhaust duct assembly." |
| 11. The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said | Callan '054 does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above. |

| | |
|---|---|
| void space between said inner duct liner and said outer casing. | Whereas Callan '054 does not disclose an "inner duct liner" and a "void," and Defendants' have not identified any teaching of an "inner duct liner" and a "void," as explained above, Callan '054 also does not teach a "thermal insulation material substantially filling said void space between said inner duct liner and said outer casing." Instead, Callan '054 teaches that the insulation material is adhered to and lines the inside of the duct. (*See* Callan '054, 3:67-4:12.)<br><br><br><br>Insulation 4 is exposed and not in a void between the inner duct liner and outer casing. |
| 12.  The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Callan '054 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above. Whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner duct liner," as explained above, Callan '054 also does not teach an inner duct liner "formed from a metallic material, and … having a thickness to provide a specified fire rating." |
| 13.  The exhaust duct module as claimed in claim 12, wherein said | Callan '054 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above. |

| | |
|---|---|
| thermal insulation material comprises one of a batt insulation material and an insulation board. | |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br><br>    an inner duct liner formed with a generally rectangular cross-section; | Callan '054 does not teach a fire-rated exhaust duct assembly or exhaust duct modules as set forth above.  Callan '054 pertains to "conduits for conveying air in air-conditioning, ventilating and heating systems and the like." (Callan '054, 1:15-23.) Consequently, the conduits of Callan '054 are air-conditioning, ventilating and heating conduits, not exhaust duct modules.<br><br>Defendants' Initial Invalidity Contentions do not identify any teaching of an "inner duct liner" in Callan '054. Instead, Defendants' Initial Invalidity Contentions merely recite the claim language, quote a number of passages from Callan '054, and reproduce two of its figures without identifying what in in any of those passages or figures Defendants allege teaches this element. Callan '054 does not teach an inner duct liner:<br><br><br><br>Insulation 4 is exposed with no inner duct liner. |

| | |
|---|---|
| | *See also,* Callan '054, 4:10-12 ("The insulating material is on the inside of the conduit lining the metal exterior and protected by it.") |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, | Callan '054 does not teach exhaust duct modules, as explained above.<br><br>Defendants' Initial Invalidity Contentions do not identify any teaching of an "inner duct liner" or "a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material" in Callan '054. Instead, Defendants' Initial Invalidity Contentions merely recite the claim language, quote a number of passages from Callan '054, and reproduce one of its figures without identifying what in in any of those passages or figure Defendants allege teaches these elements. Callan '054 does not teach an inner duct liner or the claimed void:<br><br><br><br>Insulation 4 is exposed with no inner duct liner. |

| | |
|---|---|
| | *See also,* Callan '054, 4:10-12 ("The insulating material is on the inside of the conduit lining the metal exterior and protected by it.") |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Callan '054 does not disclose an "inner duct liner" and a "void," and Defendants have not identified any teaching of an "inner duct liner" and a "void," as explained above, Callan '054 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship . . . ." The "thermal spacer" Defendants identify in the Initial Invalidity Contentions has no relationship with an "inner duct liner," does not maintain a "spaced relationship" between an "inner duct liner and said outer casing," and thus does not teach this claim element. Plaintiff's response to Defendants' reliance on SMACNA with regards to this element is addressed below, and incorporated herein by reference. Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants have not identified any such teaching of an "inner duct liner," as explained above, Callan '054 also does not teach a "said first exterior flange connector being joined directly to one end of said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector" in Callan '054. The passages of Callan '054 Defendants quote in connection with this element discuss a number of different parts, and Defendants do not specify which part (or parts) Defendants allege teach this element.<br><br>To the extent Plaintiff can understand Defendants' contention, whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner |

| | |
|---|---|
| | duct liner," as explained above, Callan '054 also does not teach a "said second exterior flange connector being joined directly to one end of said inner duct liner." |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Callan '054 does not teach "first and second exterior flange connectors," and Defendants have not identified any teaching of the claimed "first and second exterior flange connectors," as explained above. Because Callan '054 does not teach the claimed "first and second exterior flange connectors," Defendants have also not identified, and Callan '054 does not teach "first and second exterior flange connectors being configured to be field attachable to coupe another exhaust duct assembly." |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Callan '054 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above. Whereas Callan '054 does not disclose an "inner duct liner," and Defendants' have not identified any teaching of an "inner duct liner," as explained above, Callan '054 also does not teach an inner duct liner "formed from a metallic material, and … having a thickness to provide a specified fire rating." |
| 20.  The exhaust duct module as claimed in claim 19, wherein said thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | Callan '054 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above. |

# EXHIBIT C

| '569 Patent | Beck '268 Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | Beck '268 does not teach a fire-rated exhaust duct assembly.  Beck '268 pertains to "a coaxial and concentric tube system with an inner tube containing a supraconductor cable and/or low temperature fluids." (Beck '268, 1:6-8.) |
| two or more exhaust duct modules; | Beck '268 does not teach exhaust duct modules.  Beck '268 pertains to "a coaxial and concentric tube system with an inner tube containing a supraconductor cable and/or low temperature fluids." (Beck '268, 1:6-8.) |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Beck '268 does not teach exhaust duct modules, as explained above.

Beck '268 does not teach a "void configured for receiving an insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Beck '268.

Defendants have not identified "other background prior art or prior art identified in [the] invalidity contentions….[or] other prior art of record, including background art, as necessary to show the knowledge of a POSA[,]" thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Beck '268 does not teach "exhaust duct modules" as set forth above, and therefore does not teach a "first exterior flange connector" or "one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector." The part(s) Defendants cite in Beck '268 is not a "flange connector" because it is neither a "flange" nor a "connector." |

| | |
|---|---|
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Beck '268 does not teach "exhaust duct modules" as set forth above, and does not teach a "second exterior flange connector" that is "joined directly to one end of said inner duct liner," and an "end of each of said exhaust duct modules being configured for receiving said second exterior flange connector." Defendants have failed to adequately indicate what teaching in Beck '268 Defendants argue teaches "a second exterior flange connector." Consequently, Plaintiff is unable to provide a substantive response to this contention by Defendants. |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | Beck '268 does not teach "first and second exterir flange connectors" and "exhaust duct modules" as set forth above.<br><br>Beck '268 also does not teach connectors "configured to form a field assembly junction for coupling respective ends" of "modules" to form a single "run". The passage of Beck '268 Defendants cite pertains to construction of a conduit, not joining exhaust duct modules. |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | Beck '268 does not teach "exhaust duct modules" or a "junction" as set forth above. Consequently, Beck '268 also does not teach a "joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction." |
| 3. The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | Beck '268 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 6. The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed | Beck '268 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. Whereas Beck '268 does not pertain to exhaust systems, let alone exhaust systems for flammable exhausts, it would not have been obvious for a POSITA to use a thickness of metallic material to provide a specified fire rating in Beck '268. |

| | |
|---|---|
| from a metallic material, and each having a thickness to provide a specified fire rating. | |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | Beck '268 does not teach a fire-rated exhaust duct assembly as set forth above.  Beck '268 pertains to "a coaxial and concentric tube system with an inner tube containing a supraconductor cable and/or low temperature fluids." (Beck '268, 1:6-8.) |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more thermal spacers thermally isolating | Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.<br><br>Beck '268 does not teach a "void configured for receiving an insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Beck '268.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |

| said inner duct liner from said outer casing; | |
|---|---|
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Beck '268 does not teach "exhaust duct modules" as set forth above, and therefore does not teach a "first exterior flange connector" or "one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector." The part(s) Defendants cite in Beck '268 is not a "flange connector" because it is neither a "flange" nor a "connector." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Beck '268 does not teach "exhaust duct modules" as set forth above, and does not teach a "second exterior flange connector" that is "joined directly to one end of said inner duct liner," and an "end of each of said exhaust duct modules being configured for receiving said second exterior flange connector." Defendants have failed to adequately indicate what teaching in Beck '268 Defendants argue teaches "a second exterior flange connector." Consequently, Plaintiff is unable to provide a substantive response to this contention by Defendants. |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Beck '268 does not teach a "first exterir flange connector" and "second exterir flange connector" as set forth above.<br><br>Beck '268 also does not teach connectors "configured to be field attachable to couple another exhaust duct assembly." The passage of Beck '268 Defendants cite pertains to construction of a conduit, not coupling "another exhaust duct assembly." |
| 11. The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said void space between said inner duct liner and said outer casing. | Beck '268does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above.<br><br>Beck '268 does not teach a "void configured for receiving an insulation material" as the void is not filed with an insulation material. |

|  | Defendants have not identified "other background prior art or prior art identified in [the] invalidity contentions….[or] other prior art of record, including background art, as necessary to show the knowledge of a POSA[,]" thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
|---|---|
| 12.  The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Beck '268 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above. Whereas Beck '268 does not pertain to exhaust systems, let alone exhaust systems for flammable exhausts, it would not have been obvious for a POSITA to use a thickness of metallic material to provide a specified fire rating in Beck '268. |
| 13.  The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | Beck '268 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a thermal insulation material comprising one of a batt insulation material and an insulation board. Whereas Beck '268 does not pertain to an "exhaust duct," as set forth above, it would not have been "a design choice based on the what known in the prior art" of exhaust ducts to modify the tube system of Beck '268 to use a battinsulation material or an insulation board.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial |

| | |
|---|---|
| | Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.

Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a rectangular cross-section.

Beck '268 does not teach a "void configured for receiving a compressible insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Beck '268.

Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being | Beck '268 does not teach "exhaust duct modules" as set forth above, and therefore does not teach a "first exterior flange connector" or "one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector." The part(s) Defendants cite in Beck '268 is not a "flange connector" because it is neither a "flange" nor a "connector." |

| | |
|---|---|
| configured for receiving said first exterior flange connector; | |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Beck '268 does not teach "exhaust duct modules" as set forth above, and does not teach a "second exterior flange connector" that is "joined directly to one end of said inner duct liner," and an "end of each of said exhaust duct modules being configured for receiving said second exterior flange connector." Defendants have failed to adequately indicate what teaching in Beck '268 Defendants argue teaches "a second exterior flange connector." Consequently, Plaintiff is unable to provide a substantive response to this contention by Defendants. |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Beck '268 does not teach a "first exterir flange connector" and "second exterir flange connector" as set forth above.<br><br>Beck '268 also does not teach connectors "configured to be field attachable to couple another exhaust duct assembly." The passage of Beck '268 Defendants cite pertains to construction of a conduit, not coupling "another exhaust duct assembly." |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Beck '268 does not teach the "exhaust duct module as claimed in claim 16" for the reasons set forth above. Whereas Beck '268 does not pertain to exhaust systems, let alone exhaust systems for flammable exhausts, it would not have been obvious for a POSITA to use a thickness of metallic material to provide a specified fire rating in Beck '268. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | Beck '268 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Beck '268 does not teach a thermal insulation material comprising one of a batt insulation material and an insulation board. Whereas Beck '268 does not pertain to an "exhaust duct," as set forth above, it would not have been "a design choice based on the what known in the prior art" of exhaust ducts to modify the tube system of Beck '268 to use a battinsulation material or an insulation board. |

| | |
|---|---|
| | Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |

# EXHIBIT D

| '569 Patent | Coleman '750 Reference |
|---|---|
| 1. A modular fire-rated exhaust duct assembly comprising: | Coleman '750 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue. There is no teaching in Coleman '750 that the chimney disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants' Initial Invalidity Contentions does not identify any such teaching. Plaintiff disagrees with Defendants' conclusory statement that a "POSA would have been motivated to use the teachings [of Coleman '750] to create an exhaust duct." |
| two or more exhaust duct modules; | Coleman '750 does not teach exhaust duct modules. Coleman '750 pertains to a "double-walled chimney." (Coleman '750, Abstract.) The passage of Coleman '750 cited in Defendants' Initial Invalidity Contentions does not pertain to "exhaust duct modules." |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Coleman '750 does not teach exhaust duct modules, as explained above. <br><br> Coleman '750 does not employ "exhaust duct modules having an inner duct liner and an outer casing." Instead, Coleman '750 teaches first assembling an inner pipe 10, and then assembling an outer pipe 12 over the top of the assembled inner pipe 10. (Coleman '750, 2:13-17.) <br><br> Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750. |
| and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner" and "outer casing," as explained above. <br><br> Coleman '750 does not teach an "insulation material occup[ying] said void," as explained above. |
| a first exterior flange connector, said first exterior flange connector | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above. |

| | |
|---|---|
| being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Coleman '750 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20. (*See, e.g.,* Coleman '750, 2:13-17.) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above.<br><br>Coleman '750 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20, not a flange connector. (*See, e.g.,* Coleman '750, 2:13-17.) |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," "outer casing," and having first and second "exterior flange connectors being joined directly to one end of said inner duct liner," as explained above.<br><br>Coleman '750 does not teach that the first and second "exterior flange connectors" that couple "exhaust duct modules to form a single exhaust duct run." The inner band or ring 24 of Coleman '750 couples the inner pipes 10 and 20 together. |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | Coleman '750 does not teach "exhaust duct modules," as explained above. |
| 3. The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | Coleman '750 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Coleman '750 does not teach a rectangular cross-section. The chimney system of Coleman '750 is round, not rectangular. (*See* Coleman '750, 1:9-11, Figs. 1, 3.) A POSITA would not have considered a rectangular |

| | chimney system as a design choice for the chimney system of Coleman '750 alone or in combination with SMACNA, Callan '054, and Duffy '470.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
|---|---|
| 6.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Coleman '750 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. Whereas Coleman '750 does not disclose "exhaust duct modules" with an "inner duct liner" and "outer casing," Coleman '750 also does not teach an inner duct liner and outer casing "having a thickness to provide a specified fire rating." Whereas Coleman '750 pertains to a chimney system, and not exhaust duct systems for flammable exhausts and accumulation of flammable residue, it would not have been obvious for a POSITA to make the chimney system of Coleman '750 a fire-rated system as in the '569 patent. |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | Coleman '750 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue. There is no teaching in Coleman '750 that the chimney disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants' Initial Invalidity Contentions does not identify any such teaching. Plaintiff disagrees with Defendants' conclusory statement that a "POSA would have been motivated to use the teachings [of Coleman '750] to create an exhaust duct."<br><br>Coleman '750 does not teach an exhaust duct module.  Coleman '750 pertains to a "double-walled chimney." (Coleman '750, Abstract.) |
| an inner duct liner formed with a generally rectangular cross-section; | Coleman '750 does not employ "exhaust duct modules" having "an inner duct liner." Instead, Coleman '750 teaches first assembling an inner pipe 10, and then assembling an outer pipe 12 over the top of the assembled inner pipe 10. (Coleman '750, 2:13-17.)<br><br>Defendants' Initial Invalidity Contentions concede that Coleman '750 does not teach a rectangular cross-section. The tube system of Coleman '750 is round, not rectangular. (*See* |

| | |
|---|---|
| | Coleman '750, Figs. 1, 3.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Coleman '750 alone or in combination with SMACNA, Callan '054, and Duffy '470.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Coleman '750 does not employ "exhaust duct modules" having "an outer casing." Instead, Coleman '750 teaches first assembling an inner pipe 10, and then assembling an outer pipe 12 over the top of the assembled inner pipe 10. (Coleman '750, 2:13-17.)<br><br>Defendants' Initial Invalidity Contentions concede that Coleman '750 does not teach a rectangular cross-section. The chimney system of Coleman '750 is round, not rectangular. (*See* Coleman '750, 1:9-11, Figs. 1, 3.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Coleman '750 alone or in combination with SMACNA, Callan '054, and Duffy '470.<br><br>Coleman '750 does not teach a "void being formed between at least a portion of space between said inner duct liner and said outer casing…configured for receiving an insulation material." Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner" and "outer casing," as explained above. |

| said material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Coleman '750 does not teach an "insulation material occup[ying] said void," as explained above. |
|---|---|
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above.<br><br>Coleman '750 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20. (*See, e.g.,* Coleman '750, 2:13-17.) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above.<br><br>Coleman '750 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20, not a flange connector. (*See, e.g.,* Coleman '750, 2:13-17.) |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," "outer casing," and having first and second "exterior flange connectors being joined directly to one end of said inner duct liner," as explained above.<br><br>Coleman '750 does not teach that the first and second "exterior flange connectors" that couple "exhaust duct modules to form a single exhaust duct run." The inner band or ring 24 of Coleman '750 couples the inner pipes 10 and 20 together. |
| 11.  The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said | Coleman '750 does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above.<br><br>Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750. |

| | |
|---|---|
| void space between said inner duct liner and said outer casing. | |
| 12.  The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Coleman '750 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above. Whereas Coleman '750 does not disclose "exhaust duct modules" with an "inner duct liner" and "outer casing," Coleman '750 also does not teach an inner duct liner and outer casing "having a thickness to provide a specified fire rating." Whereas Coleman '750 pertains to a chimney system, and not exhaust duct systems for flammable exhausts and accumulation of flammable residue, it would not have been obvious for a POSITA to make the chimney system of Coleman '750 a fire-rated system as in the '569 patent. |
| 13.  The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | Coleman '750 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above.

Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750.

Whereas Coleman '750 does not disclose any insulation material, it would not have been a "design choice" for a POSITA to select a thermal insulation material comprising one of a "batt insulation material and an insulation board." Defendants have not identified "other background art or prior art identified in in these invalidity contentions" with which Defendants allege Coleman '750 would be combined or "to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | Coleman '750 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue. There is no teaching in Coleman '750 that the chimney disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants' Initial Invalidity Contentions does not identify any such teaching. Plaintiff disagrees with Defendants' conclusory statement that |

| | |
|---|---|
| | a "POSA would have been motivated to use the teachings [of Coleman '750] to create an exhaust duct."<br><br>Coleman '750 does not teach an exhaust duct module.  Coleman '750 pertains to a "double-walled chimney." (Coleman '750, Abstract.) |
| an inner duct liner formed with a generally rectangular cross-section; | Coleman '750 does not employ "exhaust duct modules" having "an inner duct liner." Instead, Coleman '750 teaches first assembling an inner pipe 10, and then assembling an outer pipe 12 over the top of the assembled inner pipe 10. (Coleman '750, 2:13-17.)<br><br>Defendants' Initial Invalidity Contentions concede that Coleman '750 does not teach a rectangular cross-section. The tube system of Coleman '750 is round, not rectangular. (*See* Coleman '750, Figs. 1, 3.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Coleman '750 alone or in combination with SMACNA, Callan '054, and Duffy '470.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, | Coleman '750 does not employ "exhaust duct modules" having "an outer casing." Instead, Coleman '750 teaches first assembling an inner pipe 10, and then assembling an outer pipe 12 over the top of the assembled inner pipe 10. (Coleman '750, 2:13-17.)<br><br>Defendants' Initial Invalidity Contentions concede that Coleman '750 does not teach a rectangular cross-section. The chimney system of Coleman '750 is round, not rectangular. (*See* Coleman '750, 1:9-11, Figs. 1, 3.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Coleman '750 alone or in combination with SMACNA, Callan '054, and Duffy '470.<br><br>Coleman '750 does not teach a "void being formed between at least a portion of space between said inner duct liner and said outer casing…configured for receiving a compressible |

| | |
|---|---|
| | insulation material." Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750.<br><br>Defendants have not identified "other prior art of record, including background art to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner" and "outer casing," as explained above.<br><br>Coleman '750 does not teach an "insulation material occup[ying] said void," as explained above. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above.<br><br>Coleman '750 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20. (*See, e.g.,* Coleman '750, 2:13-17.) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," as explained above.<br><br>Coleman '750 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Coleman '750 discloses only a "flange" formed on the ends of inner pipes 16 and 20, not a flange connector. (*See, e.g.,* Coleman '750, 2:13-17.) |

| | |
|---|---|
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Coleman '750 does not teach "exhaust duct modules" with an "inner duct liner," "outer casing," and having first and second "exterior flange connectors being joined directly to one end of said inner duct liner," as explained above.<br><br>Coleman '750 does not teach that the first and second "exterior flange connectors" that couple "exhaust duct modules to form a single exhaust duct run." The inner band or ring 24 of Coleman '750 couples the inner pipes 10 and 20 together. |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Coleman '750 does not teach the "exhaust duct module as claimed in claim 16" for the reasons set forth above. Whereas Coleman '750 does not disclose "exhaust duct modules" with an "inner duct liner" and "outer casing," Coleman '750 also does not teach an inner duct liner and outer casing "having a thickness to provide a specified fire rating." Whereas Coleman '750 pertains to a chimney system, and not exhaust duct systems for flammable exhausts and accumulation of flammable residue, it would not have been obvious for a POSITA to make the chimney system of Coleman '750 a fire-rated system as in the '569 patent. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | Coleman '750 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above.<br><br>Coleman '750 does not disclose any "insulation material," and Defendants' Initial Invalidity Contentions do not identify any such teaching in Coleman '750.<br><br>Whereas Coleman '750 does not disclose any insulation material, it would not have been a "design choice" for a POSITA to select a thermal insulation material comprising one of a "batt insulation material and an insulation board." Defendants have not identified "other background art or prior art identified in in these invalidity contentions" with which Defendants allege Coleman '750 would be combined or "to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |

# EXHIBIT E

| '569 Patent | Zogg '841 Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 teach that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. |
| two or more exhaust duct modules; | No dispute. |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | No dispute. |
| and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | No dispute. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Zogg '841 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell 55, not a flange connector joined to the inner shell.  (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |

| | |
|---|---|
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Zogg '841 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell 55, not a flange connector joined to the inner shell.  (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | Zogg '841 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Zogg '841 are connected using V-band 40, not "exterior flange connectors." (*See, e.g.,* Zogg '841, 4:55-5:38, 5:65-67, Figs. 2, 3, and 6.) |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | Defendants allege that the v-band of Zogg '841 teaches the "joint encasement section" element in the Initial Invalidity Contentions. The V-band 40 does not "encase" the junction between shells, and therefore is not a "joint encasement section." |
| 3.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | Zogg '841 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a rectangular cross-section. The chimney system of Zogg '841 is obround, not rectangular. (*See* Zogg '841, 1:49-58, Figs. 1, 3, 4, and 7.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Zogg '841 alone or in combination with SMACNA, Callan '054, and Duffy '470, particularly because a primary purpose of Zogg '841 is to improve on rectangular chimney systems by using an obround shape instead of a rectangle. (*See* Zogg '841, 1:49-58, 2:25-31, 4:14-20, 5:45-47.) |
| 6.  The modular fire-rated exhaust duct assembly as claimed in | Zogg '841 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. |

| claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. A POSITA would not have considered a Zogg '841 as rendering obvious a fire-rated duct system, either alone or in combination of Duffy '470 and '290, because Zogg '841 was simple HVAC system not designed for or intended to be used to exhaust flammable gasses or vapors that leave a flammable residue. |
|---|---|
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 teach that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a rectangular cross-section. The chimney system of Zogg '841 is obround, not rectangular. (*See* Zogg '841, 1:49-58, Figs. 1, 3, 4, and 7.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Zogg '841 alone or in combination with SMACNA, Callan '054, and Duffy '470, particularly because a primary purpose of Zogg '841 is to improve on rectangular chimney systems by using an obround shape instead of a rectangle. (*See* Zogg '841, 1:49-58, 2:25-31, 4:14-20, 5:45-47.) |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a rectangular cross-section. The chimney system of Zogg '841 is obround, not rectangular. (*See* Zogg '841, 1:49-58, Figs. 1, 3, 4, and 7.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Zogg '841 alone or in combination with SMACNA, Callan '054, and Duffy '470, particularly because a primary purpose of Zogg '841 is to improve on rectangular chimney systems by using an obround shape instead of a rectangle. (*See* Zogg '841, 1:49-58, 2:25-31, 4:14-20, 5:45-47.) |

| | |
|---|---|
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | No dispute. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Zogg '841 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell 55, not a flange connector joined to the inner shell. (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Zogg '841 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell 55, not a flange connector joined to the inner shell. (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Zogg '841 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Zogg '841 are connected using V-band 40, not "exterior flange connectors." (*See, e.g.,* Zogg '841, 4:55-5:38, 5:65-67, Figs. 2, 3, and 6.) |
| 11.  The exhaust duct module as claimed in claim 10, further including a thermal insulation | Zogg '841 does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above. |

| | |
|---|---|
| material substantially filling said void space between said inner duct liner and said outer casing. | |
| 12.   The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Zogg '841 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above.<br><br>Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. A POSITA would not have considered a Zogg '841 as rendering obvious a fire-rated duct system, either alone or in combination of Duffy '470 and '290, because Zogg '841 was simple HVAC system not designed for or intended to be used to exhaust flammable gasses or vapors that leave a flammable residue. |
| 13.   The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | Zogg '841 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a thermal insulation material comprises one of a batt insulation material and an insulation board. Plaintiff disagrees with Defendants' conclusory statements that a "POSA would have understood that thermal insulation for use in an exhaust duct can either be a batt insulation material, blanket insulation material and an insulation board. Such a choice would be nothing more than a design choice based on what was known in the prior art." Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct | Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 teach that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or |

| | |
|---|---|
| assembly, said exhaust duct module comprising: | vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a rectangular cross-section. The chimney system of Zogg '841 is obround, not rectangular. (*See* Zogg '841, 1:49-58, Figs. 1, 3, 4, and 7.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Zogg '841 alone or in combination with SMACNA, Callan '054, and Duffy '470, particularly because a primary purpose of Zogg '841 is to improve on rectangular chimney systems by using an obround shape instead of a rectangle. (*See* Zogg '841, 1:49-58, 2:25-31, 4:14-20, 5:45-47.) |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, | Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a rectangular cross-section. The chimney system of Zogg '841 is obround, not rectangular. (*See* Zogg '841, 1:49-58, Figs. 1, 3, 4, and 7.) A POSITA would not have considered a rectangular chimney system as a design choice for the chimney system of Zogg '841 alone or in combination with SMACNA, Callan '054, and Duffy '470, particularly because a primary purpose of Zogg '841 is to improve on rectangular chimney systems by using an obround shape instead of a rectangle. (*See* Zogg '841, 1:49-58, 2:25-31, 4:14-20, 5:45-47.) Defendants' Initial Invalidity Contentions do not identify any such teaching in Zogg '841, or otherwise argue that such a "compressible insulation material" would otherwise have been obvious. |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | No dispute. |
| a first exterior flange connector, said first exterior flange connector | Zogg '841 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell |

| | |
|---|---|
| being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | 55, not a flange connector joined to the inner shell.  (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Zogg '841 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Zogg '841 discloses only a "flange" formed on the ends of inner shell 55, not a flange connector joined to the inner shell.  (*See, e.g.,* Zogg '841, 5:59-61, 2:25-31, 4:17-20, 5:45-47.) |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Zogg '841 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Zogg '841 are connected using V-band 40, not "exterior flange connectors." (*See, e.g.,* Zogg '841, 4:55-5:38, 5:65-67, Figs. 2, 3, and 6.) |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Zogg '841 does not teach the "exhaust duct module as claimed in claim 16" for the reasons set forth above. <br><br> Zogg '841 does not teach a fire-rated exhaust duct assembly for exhausting flammable exhausts and accumulation of flammable residue.  Nowhere does Zogg '841 that the chimney duct disclosed therein is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Zogg '841 in the Initial Invalidity Contentions. A POSITA would not have considered a Zogg '841 as rendering obvious a fire-rated duct system, either alone or in combination of Duffy '470 and '290, because Zogg '841 was simple HVAC system not designed for or intended to be used to exhaust flammable gasses or vapors that leave a flammable residue. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said | Zogg '841 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above. |

| thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | Defendants' Initial Invalidity Contentions concede that Zogg '841 does not teach a thermal insulation material comprises one of a batt insulation material and an insulation board. Plaintiff disagrees with Defendants' conclusory statements that a "POSA would have understood that thermal insulation for use in an exhaust duct can either be a batt insulation material, blanket insulation material and an insulation board. Such a choice would be nothing more than a design choice based on what was known in the prior art." Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| --- | --- |

# EXHIBIT F

| '569 Patent | Duffy '470 Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | No dispute. |
| two or more exhaust duct modules; | No dispute. |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Duffy '470 does not teach a void between an inner duct liner and an outer casing. (*See* Duffy '470, para. [0028], Fig. 4.)<br><br><br><br>Inner duct liner 12 is tight against fire-resistant panels 14 and 16.<br><br>FIG. 4<br><br>Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach a "void being configured for receiving an insulation material." |

| | |
|---|---|
| and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void."<br><br>None of the corner angle member 20a, end connector frame 22a, and parallel legs 31 is a "thermal spacer" because none of these parts "maintain[s] said inner duct liner and said outer casing in a spaced relationship…." (*See* Duffy '470, paras. [0030], [0033], [0035] Figs. 2, 5.) |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | No dispute. |
| a joint encasement section configured to be field connectable to | Defendants allege that the "sealant applied to joints between the liner section and the flange assemblies" and between "the inner duct liner and the fire-resistant panels" teaches the "joint |

| | |
|---|---|
| each of said exhaust duct modules and encase said junction. | encasement section" element in the Initial Invalidity Contentions. Sealant placed between parts that are joined together to seal the joint do not "encase" the junction and is not a "joint encasement section." |
| 3.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | Duffy '470 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. |
| 6.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Duffy '470 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br>    an inner duct liner formed with a generally rectangular cross-section; | No dispute. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said | Duffy '470 does not teach a void between an inner duct liner and an outer casing. (*See* Duffy '470, para. [0028], Fig. 4.) |

| | |
|---|---|
| void being configured for receiving an insulation material, | <br><br>Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach a "void being configured for receiving an insulation material." |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void."<br><br>None of the corner angle member 20a, end connector frame 22a, and parallel legs 31 is a "thermal spacer" because none of these parts "maintain[s] said inner duct liner and said outer casing in a spaced relationship…." (*See* Duffy '470, paras. [0030], [0033], [0035] Figs. 2, 5.) |

| | |
|---|---|
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | No dispute. |
| 11. The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said void space between said inner duct liner and said outer casing. | Duffy '470 does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above.<br><br>Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach a "thermal insulation material substantially filling said void."<br><br>Defendants' quotation from paragraph [0005] of Duffy '470 discusses a prior art duct, the FRD-2, not the invention of Duffy '470. |
| 12. The exhaust duct module as claimed in claim 11, wherein said | Duffy '470 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above. |

| inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | |
|---|---|
| 13.  The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | Duffy '470 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above.<br><br>Duffy '470 does not teach the "thermal insulation material" for the reasons set forth above. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br>    an inner duct liner formed with a generally rectangular cross-section; | No dispute. |
|     an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, | Duffy '470 does not teach a void between an inner duct liner and an outer casing. (*See* Duffy '470, para. [0028], Fig. 4.) |



Inner duct liner 12 is tight against fire-resistant panels 14 and 16.

FIG. 4

| | Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach a "void being configured for receiving an insulation material." |
|---|---|
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | Whereas Duffy '470 does not disclose a "void," and Defendants' have not identified any teaching of a "void," as explained above, Duffy '470 also does not teach "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void." |
| | None of the corner angle member 20a, end connector frame 22a, and parallel legs 31 is a "thermal spacer" because none of these parts "maintain[s] said inner duct liner and said outer casing in a spaced relationship…." (*See* Duffy '470, paras. [0030], [0033], [0035] Figs. 2, 5.) |

| | |
|---|---|
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Duffy '470 teaches that duct modules are connected via bolt and nut fasteners 40, 42 passed through holes 34 in stamped corner pieces 32. (*see* Duffy '470 at paras. [0031], [0033], [0035], and [0038], Fig. 5.) The corner pieces 32 are not "flanges," and are not "joined directly to one end of the said inner duct liner." |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | No dispute. |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Duffy '470 does not teach the "exhaust duct module as claimed in claim 16" for the reasons set forth above. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said thermal insulation material comprises one of a batt insulation | Duffy '470 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above.<br><br>Duffy '470 does not teach the "thermal insulation material" for the reasons set forth above. |

| material, a blanket insulation material and an insulation board. | |

# EXHIBIT G

| '569 Patent | Caglar '912 Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | Caglar '912 does not teach a fire-rated exhaust duct assembly.  Nowhere does Caglar '912 teach that the duct disclosed is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Caglar '912 in the Initial Invalidity Contentions. Caglar '912 teaches that its chimney system is designed "to convey the products of combustion to atmosphere" and particularly "hot gasses." (Caglar '912, paras. [0002], [0003].) Caglar '912 does not discuss exhausts that are flammable, and Caglar '912 does not identify any flammable exhausts for which the disclosed chimney system could be used. Because the exhausts discussed in Caglar '912 are not flammable, the chimney systems for such exhausts do not need to be fire-rated as in the '569 patent, and a POSITA would not use a fire-rated chimney system for such exhausts. |
|    two or more exhaust duct modules; | No dispute. |
|    each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal | Caglar '912 does not teach "one or more thermal spacers thermally isolating said inner duct liner from said outer casing." There is no disclosure in Caglar '912 concerning the shape of spacers 26, 28 other than a profile view. (*See* Caglar '912 at Fig. 3.) Thus, Caglar does not disclose whether spacers 26, 28 are configured to "thermally isolate[e] said inner duct liner from said outer casing." |

| | |
|---|---|
| spacers thermally isolating said inner duct liner from said outer casing; | |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Caglar '912 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Caglar '912 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and | Caglar '912 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Caglar '912 are connected using U-band 44, not "exterior flange connectors." (*See, e.g.,* Caglar '912, 4:55-5:38, Figs. 4 – 7 (part 44).) |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | The sealing band 44 shown in Figure 6 of Caglar '912 is not a "joint encasement section" because it does not encase the junction between the annular mating flange 32 and annular mating flange 30. (Caglar '912 at paras. [0035]-[0037], Figs. 4 – 8 (part 44).) |

| | |
|---|---|
| 3.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | Caglar '912 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912. Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 6.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Caglar '912 does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Caglar '912 does not teach a fire-rated exhaust duct assembly.  Nowhere does Caglar '912 teach any fire rating, and Defendants have not identified any such teaching in Caglar '912 in the Initial Invalidity Contentions. Caglar '912 teaches that its chimney system is designed "to convey the products of combustion to atmosphere" and particularly "hot gasses." (Caglar '912, paras. [0002], [0003].) Caglar '912 does not discuss exhausts that are flammable, and Caglar '912 does not identify any flammable exhausts for which the disclosed chimney system could be used. Because the exhausts discussed in Caglar '912 are not flammable, the chimney systems for such exhausts do not need to be fire-rated, and a POSITA would not use a fire-rated chimney system for such exhausts. |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br>    an inner duct liner formed with a generally rectangular cross-section; | Caglar '912 does not teach a fire-rated exhaust duct assembly.  Nowhere does Caglar '912 teach that the duct disclosed is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Caglar '912 in the Initial Invalidity Contentions. Caglar '912 teaches that its chimney system is designed "to convey the products of combustion to atmosphere" and particularly "hot gasses." (Caglar '912, paras. [0002], [0003].) Caglar '912 does not discuss exhausts that are flammable, and Caglar '912 does not identify any flammable exhausts for which the |

| | |
|---|---|
| | disclosed chimney system could be used. Because the exhausts discussed in Caglar '912 are not flammable, the chimney systems for such exhausts do not need to be fire-rated as in the '569 patent, and a POSITA would not use a fire-rated chimney system for such exhausts. |
| | Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912.<br><br>Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912.<br><br>Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said | Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912. Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause.<br><br>Caglar '912 does not teach "one or more thermal spacers thermally isolating said inner duct liner from said outer casing." There is no disclosure in Caglar '912 concerning the shape of spacers 26, 28 other than a profile view. (*See* Caglar '912 at Fig. 3.) Thus, Caglar does not |

| | |
|---|---|
| material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | disclose whether spacers 26, 28 are configured to "thermally isolate[e] said inner duct liner from said outer casing." |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Caglar '912 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Caglar '912 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Caglar '912 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Caglar '912 are connected using U-band 44, not "exterior flange connectors." (*See, e.g.,* Caglar '912, 4:55-5:38, Figs. 4 – 7 (part 44).) |
| 11. The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said | Caglar '912 does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above. |

| | |
|---|---|
| void space between said inner duct liner and said outer casing. | |
| 12.  The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Caglar '912 does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912. Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 13.  The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | Caglar '912 does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:<br>    an inner duct liner formed with a generally rectangular cross-section; | Caglar '912 does not teach a fire-rated exhaust duct assembly.  Nowhere does Caglar '912 teach that the duct disclosed is fire-rated or is intended to exhaust flammable gasses or vapors that leave a flammable residue, and Defendants have not identified any such teaching in Caglar '912 in the Initial Invalidity Contentions. Caglar '912 teaches that its chimney system is designed "to convey the products of combustion to atmosphere" and particularly "hot gasses." (Caglar '912, paras. [0002], [0003].) Caglar '912 does not discuss exhausts that are flammable, and Caglar '912 does not identify any flammable exhausts for which the disclosed chimney system could be used. Because the exhausts discussed in Caglar '912 are not flammable, the chimney systems for such exhausts do not need to be fire-rated as in the '569 patent, and a POSITA would not use a fire-rated chimney system for such exhausts. |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially | Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for |

| | |
|---|---|
| surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912. Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. <br><br> Caglar '912 does not teach "one or more thermal spacers thermally isolating said inner duct liner from said outer casing." There is no disclosure in Caglar '912 concerning the shape of spacers 26, 28 other than a profile view. (*See* Caglar '912 at Fig. 3.) Thus, Caglar does not disclose whether spacers 26, 28 are configured to "thermally isolate[e] said inner duct liner from said outer casing." |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Caglar '912 does not teach a "first exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being | Caglar '912 does not teach a "second exterior flange connector being joined directly to one end of said inner duct liner." Caglar '912 discloses only a "flange" formed on the ends of inner wall 22. (*See, e.g.,* Caglar '912, para. [0034], Figs. 2-5, and 8 (parts 30, 32).) |

| configured for receiving said second exterior flange connector; and | |
|---|---|
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Caglar '912 does not teach first and second "exterior flange connectors," as explained above. The chimney sections of Caglar '912 are connected using U-band 44, not "exterior flange connectors." (*See, e.g.,* Caglar '912, 4:55-5:38, Figs. 4 – 7 (part 44).) |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | Caglar '912 does not teach the "exhaust duct module as claimed in claim 16" for the reasons set forth above.<br><br>Defendants' Initial Invalidity Contentions concede that Caglar '912 does not teach a rectangular cross-section. The chimney system of Caglar '912 is round, not rectangular. (*See* Caglar '912, para. [0034], Figs. 1, 2, 4, and 6.) Defendants have not provided any support for the conclusory statement that a POSITA would not have considered a rectangular chimney system as a "design choice" for the chimney system of Caglar '912. Defendants have not identified "other prior art of record, including background art … to show the knowledge of a POSA," thereby failing to satisfy its burden with regard to the Initial Invalidity Contentions. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | Caglar '912 does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above. The Initial Invalidity contentions only make reference to "claim 12," and not to claim 19 as recited by claim 20, and therefore fail to make out a prima facie case of invalidity for claim 20. |

# EXHIBIT H

| '569 Patent | SMACNA Reference |
|---|---|
| 1.  A modular fire-rated exhaust duct assembly comprising: | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of a modular fire-rated exhaust duct assembly. SMACNA does not disclose any particular duct system, but rather merely sets forth a variety of standards to be applied to certain types of duct systems. Further, the standards in SMACNA are for HVAC systems, not fire-rated duct systems intended for the types of use set forth in the '569 patent. Thus, Defendants have not identified a "modular fire-rated exhaust duct assembly" in SMACNA. |
| two or more exhaust duct modules; | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of two or more exhaust duct modules. SMACNA Figure 2-8 cited by Defendants is of an "Unreinforced Duct," not duct modules. |
| each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | SMACNA does not teach "two or more exhaust duct modules" as explained above. Plaintiff does not dispute that SMACNA teaches a duct "having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material." |
| and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | The "thermal spacer" Defendants identify in Figure 7-11 of SMACNA  merely covers an otherwise exposed end of the liner inside the duct and does not "maintain said inner duct liner and said outer casing in a spaced relationship…."

The only disclosure of the "thermal spacer" Defendants identify in Figure 9-11 is profile view. Thus, SMACNA also does disclose whether the "thermal spacers" in Figure 9-11 are configured to "thermally isolate[e] said inner duct liner from said outer casing," but instead teaches that the parts identified by Defendants are "braces" to provide rigidity.

The "joint profile" Defendants identify in Figure 1-4A of 1995 SMACNA is not a "thermal spacer," but rather is for "joints" and not to "maintain said inner duct liner and said outer |

| | |
|---|---|
| | casing in a spaced relationship." Defendants have not identified any teaching in 1995 SMACNA that the "joints" of Figure 1-4A are used as "thermal spacers."<br><br>The Appendix A of SMACNA showing thicknesses for certain gage galvanized steel, stainless steel, and aluminum sheets does not discuss a "thermal spacer," "maintain[ing] said inner duct liner and said outer casing in a spaced relationship," or "thermally isolating said inner duct liner from said outer casing," and Defendants have not identified any teaching in Appendix A of SMACNA concerning any of these elements. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |
| said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of two or more exhaust duct modules, as explained above. SMACNA Figure 2-8 cited by Defendants as teaching this element is of an "Unreinforced Duct," not duct modules. |

| | |
|---|---|
| exhaust duct modules to form a single exhaust duct run; and | |
| a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction. | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of two or more exhaust duct modules, as explained above. SMACNA Figure 2-8 cited by Defendants as teaching this element is of an "Unreinforced Duct."  Figure 2-8 depicts a joint (i.e., a "junction") between two sections of duct, not a "joint encasement section.""<br><br>SMACNA section 1.3.1 Duct Construction and Installation Standards at S1.9 also does not teach a "joint encasement section…." S1.9 relates to sealing seams and joints in the duct work, not to "encasing a junction." |
| 3.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said exhaust duct modules have a generally rectangular cross-section. | SMACNA does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above. |
| 6.  The modular fire-rated exhaust duct assembly as claimed in claim 1, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | SMACNA does not teach the "modular fire-rated exhaust duct assembly as claimed in claim 1" for the reasons set forth above.<br><br>Sections 1.3.1 and 1.3.2 of SMACNA do not discuss or teach using a thickness of a metallic material to provide a specified fire rating, and Defendants have not pointed to any such teaching in sections 1.3.1 and 1.3.2. Nowhere does 10.1 of SMACNA, which Defendants cite, discuss fire-rated exhaust systems. Thus, Defendants have not identified any teaching a metallic material "having a thickness to provide a specified fire rating."<br><br>Defendants' citation to Duffy '290 at column 4:15-32 does not teach forming the inner duct liner of a metallic material to provide a specified fire rating as it does not even mention fire ratings.<br><br>Defendants have failed to provide any evidence to support their contention that a POSITA "would know that the materials chosen for the inner duct liner and outer casing including the |

| | |
|---|---|
| | thickness of those materials would impact resistance to fire" and that it "would have been obvious to select materials sufficient to meet a specified fire rating" apart from the SMACNA and Duffy '290 references. To the extent Defendants allege such teachings would have been obvious on any other ground, including based on the knowledge of a POSITA, Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 10.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | SMACNA does not disclose any particular duct system, but rather merely sets forth a variety of standards to be applied to certain types of duct systems. Further, the standards in SMACNA are for HVAC systems, not fire-rated duct systems intended for the types of use set forth in the '569 patent. Thus, Defendants have not identified a "modular fire-rated exhaust duct assembly" in SMACNA. |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of an exhaust duct module as set forth above. Plaintiff does not dispute that SMACNA teaches a duct with "an inner duct liner formed with a generally rectangular cross-section." |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of an exhaust duct module as set forth above. Plaintiff does not dispute that SMACNA teaches a duct with "an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material." |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more | The "thermal spacer" Defendants identify in Figure 7-11 of SMACNA  merely covers an otherwise exposed end of the liner inside the duct and does not "maintain said inner duct liner and said outer casing in a spaced relationship…." The only disclosure of the "thermal spacer" Defendants identify in Figure 9-11 is profile view. Thus, SMACNA also does disclose whether the "thermal spacers" in Figure 9-11 are |

| | |
|---|---|
| thermal spacers thermally isolating said inner duct liner from said outer casing; | configured to "thermally isolate[e] said inner duct liner from said outer casing," but instead teaches that the parts identified by Defendants are "braces" to provide rigidity.<br><br>The "joint profile" Defendants identify in Figure 1-4A of 1995 SMACNA is not a "thermal spacer," but rather is for "joints" and not to "maintain said inner duct liner and said outer casing in a spaced relationship." Defendants have not identified any teaching in 1995 SMACNA that the "joints" of Figure 1-4A are used as "thermal spacers."<br><br>The Appendix A of SMACNA showing thicknesses for certain gage galvanized steel, stainless steel, and aluminum sheets does not discuss a "thermal spacer," "maintain[ing] said inner duct liner and said outer casing in a spaced relationship," or "thermally isolating said inner duct liner from said outer casing," and Defendants have not identified any teaching in Appendix A of SMACNA concerning any of these elements. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |

| | |
|---|---|
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of two or more exhaust duct modules, as explained above. SMACNA Figure 2-8 cited by Defendants as teaching this element is of an "Unreinforced Duct," not duct modules. |
| 11.  The exhaust duct module as claimed in claim 10, further including a thermal insulation material substantially filling said void space between said inner duct liner and said outer casing. | SMACNA does not teach the "exhaust duct module as claimed in claim 10" for the reasons set forth above. |
| 12.  The exhaust duct module as claimed in claim 11, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | SMACNA does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above.

Sections 1.3.1 and 1.3.2 of SMACNA do not discuss or teach using a thickness of a metallic material to provide a specified fire rating, and Defendants have not pointed to any such teaching in sections 1.3.1 and 1.3.2. Nowhere does 10.1 of SMACNA, which Defendants cite, discuss fire-rated exhaust systems. Thus, Defendants have not identified any teaching a metallic material "having a thickness to provide a specified fire rating."

Defendants' citation to Duffy '290 at column 4:15-32 does not teach forming the inner duct liner of a metallic material to provide a specified fire rating as it does not even mention fire ratings.

Defendants have failed to provide any evidence to support their contention that a POSITA "would know that the materials chosen for the inner duct liner and outer casing including the thickness of those materials would impact resistance to fire" and that it "would have been obvious to select materials sufficient to meet a specified fire rating" apart from the SMACNA and Duffy '290 references. To the extent Defendants allege such teachings would have been obvious on any other ground, including based on the knowledge of a POSITA, Plaintiff |

| | |
|---|---|
| | objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 13.  The exhaust duct module as claimed in claim 12, wherein said thermal insulation material comprises one of a batt insulation material and an insulation board. | SMACNA does not teach the "exhaust duct module as claimed in claim 12" for the reasons set forth above. |
| 16.  An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising: | SMACNA does not disclose any particular duct system, but rather merely sets forth a variety of standards to be applied to certain types of duct systems. Further, the standards in SMACNA are for HVAC systems, not fire-rated duct systems intended for the types of use set forth in the '569 patent. Thus, Defendants have not identified a "modular fire-rated exhaust duct assembly" in SMACNA. |
| an inner duct liner formed with a generally rectangular cross-section; | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of an exhaust duct module as set forth above. Plaintiff does not dispute that SMACNA teaches a duct with "an inner duct liner formed with a generally rectangular cross-section." |
| an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of an exhaust duct module as set forth above. Plaintiff does not dispute that SMACNA teaches a duct with "an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material." |
| and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said | The "thermal spacer" Defendants identify in Figure 7-11 of SMACNA  merely covers an otherwise exposed end of the liner inside the duct and does not "maintain said inner duct liner and said outer casing in a spaced relationship…." |

| | |
|---|---|
| compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing; | The only disclosure of the "thermal spacer" Defendants identify in Figure 9-11 is profile view. Thus, SMACNA also does disclose whether the "thermal spacers" in Figure 9-11 are configured to "thermally isolate[e] said inner duct liner from said outer casing," but instead teaches that the parts identified by Defendants are "braces" to provide rigidity.<br><br>The "joint profile" Defendants identify in Figure 1-4A of 1995 SMACNA is not a "thermal spacer," but rather is for "joints" and not to "maintain said inner duct liner and said outer casing in a spaced relationship." Defendants have not identified any teaching in 1995 SMACNA that the "joints" of Figure 1-4A are used as "thermal spacers."<br><br>The Appendix A of SMACNA showing thicknesses for certain gage galvanized steel, stainless steel, and aluminum sheets does not discuss a "thermal spacer," "maintain[ing] said inner duct liner and said outer casing in a spaced relationship," or "thermally isolating said inner duct liner from said outer casing," and Defendants have not identified any teaching in Appendix A of SMACNA concerning any of these elements. Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector; | Defendants' Initial Invalidity Contentions do not identify a "first exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |
| a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being | Defendants' Initial Invalidity Contentions do not identify a "second exterior flange connector being joined directly to one end of said inner duct liner" in SMACNA. Figure 2-16 and 2-17 disclose flanges that are formed on the ends of a section of duct. |

| | |
|---|---|
| configured for receiving said second exterior flange connector; and | |
| said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly. | Defendants' Initial Invalidity Contentions do not cite to any teaching in SMACNA of two or more exhaust duct modules, as explained above. SMACNA Figure 2-8 cited by Defendants as teaching this element is of an "Unreinforced Duct," not duct modules. |
| 19.  The exhaust duct module as claimed in claim 16, wherein said inner duct liner and said outer casing are formed from a metallic material, and each having a thickness to provide a specified fire rating. | SMACNA does not teach the "exhaust duct module as claimed in claim 11" for the reasons set forth above.<br><br>Sections 1.3.1 and 1.3.2 of SMACNA do not discuss or teach using a thickness of a metallic material to provide a specified fire rating, and Defendants have not pointed to any such teaching in sections 1.3.1 and 1.3.2. Nowhere does 10.1 of SMACNA, which Defendants cite, discuss fire-rated exhaust systems. Thus, Defendants have not identified any teaching a metallic material "having a thickness to provide a specified fire rating."<br><br>Defendants' citation to Duffy '290 at column 4:15-32 does not teach forming the inner duct liner of a metallic material to provide a specified fire rating as it does not even mention fire ratings.<br><br>Defendants have failed to provide any evidence to support their contention that a POSITA "would know that the materials chosen for the inner duct liner and outer casing including the thickness of those materials would impact resistance to fire" and that it "would have been obvious to select materials sufficient to meet a specified fire rating" apart from the SMACNA and Duffy '290 references. To the extent Defendants allege such teachings would have been obvious on any other ground, including based on the knowledge of a POSITA, Plaintiff objects to such "hiding the ball" tactics and objects to supplementing this disclosure without demonstrating good cause. |
| 20.  The exhaust duct module as claimed in claim 19, wherein said | SMACNA does not teach the "exhaust duct module as claimed in claim 19" for the reasons set forth above. |

| thermal insulation material comprises one of a batt insulation material, a blanket insulation material and an insulation board. | |