E-FILED
Friday, 10 June, 2022  01:11:36 AM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

## FILED UNDER SEAL

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| DURASYSTEMS BARRIERS INC., a Canadian corporation, | |
| Plaintiff, | Case No. 1:19-cv-01388-SLD-JEH |
| v. | Chief Judge Sara Darrow |
| VAN-PACKER CO., an Illinois corporation, and JEREMIAS, INC., a Georgia corporation, | Magistrate Judge Jonathan E. Hawley |
| Defendants. | |

**EXPERT REPORT OF TIMOTHY L. MORSE, PH.D.,
REGARDING NON-INFRINGEMENT OF U.S. PATENT NO. 10,024,569**

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.      QUALIFICATIONS ................................................................................................... 3

III.      SUMMARY OF OPINIONS ..................................................................................... 3

IV.      LEGAL STANDARDS ............................................................................................. 3

     A.      Claim Construction ...................................................................................... 3

     B.      Literal Infringement ..................................................................................... 4

     C.      Doctrine of Equivalents .............................................................................. 4

V.      CLAIM CONSTRUCTION ...................................................................................... 6

VI.      TECHNOLOGY OVERVIEW .................................................................................. 7

VII.      ACCUSED PRODUCT ............................................................................................. 7

VIII.      THE PATENT-IN-SUIT .......................................................................................... 11

     A.      Subject Matter of the '569 Patent ............................................................. 11

     B.      Level of Skill in the Art ............................................................................. 13

     C.      Asserted Claims ......................................................................................... 13

IX.      STATEMENT OF, AND BASIS FOR, NON-INFRINGEMENT OPINIONS .............. 13

     A.      The '569 Patent ......................................................................................... 15

         1.      Claim 1 .......................................................................................... 15

         2.      Claim 3 .......................................................................................... 21

         3.      Claim 6 .......................................................................................... 21

         4.      Claim 10 ........................................................................................ 22

         5.      Claim 11 ........................................................................................ 24

         6.      Claim 12 ........................................................................................ 24

         7.      Claim 13 ........................................................................................ 24

         8.      Claim 16 ........................................................................................ 24

         9.      Claim 19 ........................................................................................ 26

         10.      Claim 20 ........................................................................................ 26

X.      COMPRESSIBLE INSULATION MATERIAL ....................................................... 26

XI.      CONCLUSION ....................................................................................................... 28

XII.      SIGNATURE .......................................................................................................... 28

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

## I.    <u>INTRODUCTION</u>

1.      As noted in my previous report served on February 11, 2021 (referenced herein as my "Opening Report") I have been retained by K&L Gates LLP on behalf of Defendants Van-Packer Co. ("Van-Packer") and Jeremias, Inc. ("Jeremias") (collectively, "Van-Packer").

2.      I understand that Plaintiff DuraSystems Barriers Inc. ("DuraSystems" or "Plaintiff") allege that certain Van-Packer products infringe certain claims of U.S. Patent No. 10,024,569 ("the '569 Patent" or "Patent-in-Suit").

3.      This report is submitted in response to the expert reports of Mr. Tony Crimi ("the Crimi Report") regarding infringement of the '569 Patent and Dr. Mark Colton ("the Colton Report") regarding the insulation used in certain Van-Packer products.

4.      This report, submitted pursuant to Federal Rule of Civil Procedure 26(a)(2), sets forth the opinions as to which, if asked, I will testify at trial with respect to the Patents-in-Suit, along with the bases and reasons for those opinions. In addition, if asked, I may respond to the opinions and testimony of Plaintiff's witnesses regarding issues within my area of expertise. I reserve the right to supplement the opinions expressed in this report, including opinions based on any fact discovery occurring after the date of this report, or if I am asked to form other opinions.

5.      In particular I have been asked to provide my opinion on the operation of the Van-Packer Model GRZ Grease Duct System and Jeremias DWGD-RZ Grease Duct System (collectively the "GRZ Duct").

6.      As part of my work in connection with this report, I undertook several steps to form my knowledge regarding the operation of the GRZ Duct. In particular, I performed the following exercises:

> a.      I reviewed the Crimi Report regarding infringement and the documents referenced in his expert report regarding infringement;

1

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

b.    I reviewed the Colton Report regarding the insulation used in certain Van-Packer products and the documents referenced in his expert report;

c.    I reviewed portions of deposition transcripts of Robin Rediger, Bill Sims, Barry Cheek, Joseph Dykema, Christopher Hurst, William Duffy, Paul Wells and Tony Crimi;

d.    I reviewed and assembled a physical sample of the GRZ Duct; and

e.    I have communicated with Robin Rediger and Bill Sims of Van-Packer regarding the GRZ Duct.

7.    After performing these steps and any other tasks I describe in more detail below, I arrived at the conclusion that the GRZ Duct does not satisfy every limitation of claims 1, 3, 6, 10-13, 16, 19, and 20 of the '569 Patent.

8.    I have also communicated with Alexander Clemons of Ocean Tomo, LLC, who I understand is Van-Packer's economic expert in this case. I have also considered my own knowledge of the technology at issue and related technology, as well as any experiences referenced in my curriculum vitae.

9.    This Report is based on the information currently available to me. I reserve the right to further supplement my analysis in this report in response to any additional reports provided by Plaintiff. I also reserve the right to amend or supplement my opinions based on further discovery and information provided in the case and/or based on any amended claim construction orders issued by the Court.

10.    I am a salaried employee of Exponent, Inc. For my work in this case in 2022, Exponent is being compensated by Van-Packer at my customary rate of $455 per hour. Exponent is also being reimbursed for reasonable and customary expenses associated with my work in this case. No portion of my compensation is dependent or otherwise contingent upon the specifics of my testimony or the results of this lawsuit.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

## II.     QUALIFICATIONS

11.     I have summarized my educational background, career history, and other relevant qualifications in Paragraphs 6-15 of my Opening Report. My full *curriculum vitae*, which includes a more detailed summary of my background, experience, patents, and publications, is attached as Exhibit 1 to this expert report.

## III.     SUMMARY OF OPINIONS

12.     In my opinion, based on the analysis below, the GRZ Duct does not literally infringe claims 1, 3, 6, 10-13, 16, 19, and 20 of the '569 Patent.

## IV.     LEGAL STANDARDS

13.     I am not an attorney, nor a legal expert and offer no opinions on the law. In preparation for this report, counsel has informed me of the legal standards as they relate to patent infringement, and I have applied them in arriving at my opinions in this case.

14.     I understand that a patent claim is directly infringed when a party makes, uses, offers to sell, or sells within the United States, or imports into the United States, a product or system that includes each element of a patent claim.

15.     I understand that to determine infringement, one must first determine the scope of the claims. Next, I understand that one must compare the accused product with the limitations of each claim of the asserted patent. I understand that infringement may either be literal or under the doctrine of equivalents. The burden of proving infringement rests with the patentee, who must prove it by a preponderance of the evidence, meaning more likely to be true than not true.

### A.     Claim Construction

16.     I understand that the first step in any infringement analysis is to determine the scope of the claims at issue and that such claim construction is a legal matter to be decided by the Court.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

I understand that claims are construed based on the claim language, the specification, and the file history (i.e., "intrinsic evidence"). I further understand that, at times, extrinsic evidence such as dictionaries, prior art, and general knowledge of one of ordinary skill in the art can be used to determine the meaning and construction of claim terms so long as it does not contradict the intrinsic evidence.

17.    I understand that Van-Packer and DuraSystems agreed to the meaning of some claim terms as detailed below in Section V.

### B.    Literal Infringement

18.    It is my understanding that a patent claim is literally infringed only if the accused product includes each and every element in the patent claim. If an accused product does not contain one or more of the limitations recited in a claim, the product does not literally infringe that claim. I understand that if an accused product includes each element of the claim, then the product infringes the claim even if the product contains additional elements or steps that are not recited in the claim.

19.    I understand that dependent claims include all of the requirements of the independent claim from which the dependent claim depends, plus additional requirements of their own. As a result, if an independent claim is not infringed, any claim depending therefrom is also not infringed. On the other hand, if an independent claim has been infringed, it is still necessary to separately decide whether the asserted dependent claims have also been infringed.

### C.    Doctrine of Equivalents

20.    I understand that a product may infringe a claim of a patent even if every element of that claim is not literally present in the accused product. However, I understand that to do so there must be an equivalent component or part in the accused product for each element of the

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

patent claim that is not literally present in the accused product. This is called infringement under the doctrine of equivalents.

21.     I understand that in determining infringement under the doctrine of equivalents, the fact-finder must consider whether the substituted element represents a change that a person of ordinary skill in the art (hereinafter referred to as "POSITA") would have considered insubstantial at the time of the infringement. In determining whether the one or more components of the accused product or method are equivalent to an element of the claimed invention, I understand that I should consider whether at the time of the infringement persons reasonably skilled in the art would have known of the interchangeability of that component or those components with the element claimed in the patent claim.

22.     I also understand that an accused instrumentality meets a claim limitation under the doctrine of equivalents if the corresponding element of the accused instrumentality performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claim limitation.

23.     I understand that the doctrine of equivalents cannot be used to effectively eliminate (or "vitiate") the requirement for a particular claim element—for example, the opposite of a claim limitation cannot be equivalent to that limitation.

24.     It is my understanding that there can be no infringement of a claim limitation under the doctrine of equivalents if the element is wholly lacking in the accused instrumentality or if the range of equivalents being asserted is so broad that it would encompass the prior art.

25.     I understand that the burden is on Plaintiff to prove that the accused functionality infringes, either literally or by the doctrine of equivalents, every limitation of every Asserted Claim of the Patents-in-Suit under the Court's constructions. I understand that this burden requires

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

Plaintiff to prove infringement by a preponderance of the evidence standard, which requires a showing that infringement is "more likely than not."

## V.    CLAIM CONSTRUCTION

26.    I understand that a number of terms of the asserted claims have been construed by the Central District of Illinois and that the Court's constructions for these terms must be applied in this litigation. I understand that the Court issued its Claim Construction Order on September 3, 2021. I have reviewed that order (attached as Exhibit 2) and have applied those constructions while forming my opinions set forth herein.

27.    My understanding is that the Court's Claim Construction Order defined the disputed terms, or adopted the agreed terms, as reflected in the following chart.

| Asserted Claims | Claim Limitation | Adopted Construction |
|---|---|---|
| 1, 10 and 16 | "thermal spacers thermally isolating" | "components that maintain a space between the inner duct liner and outer casing that limit the amount of heat conducted through the components so that they do not create fail points on the inner duct liner or outer casing during fire rating testing" |
| 1, 10 and 16 | "thermal spacers" | Addressed in combination with "thermally isolating" |
| 1, 10 and 16 | "thermally isolating" | Addressed in combination with "thermal spacers" |
| 1, 3, 7 and 9-20 | "exhaust duct module[s]" | "a section of pre-fabricated, factory-built exhaust duct" |
| 1 and 7-9 | "joint encasement section" | "a section of an exhaust duct module configured to encase the junction between two exhaust duct modules" |
| 1, 10 and 16 | "joined directly" | No Construction Needed |

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

28.     For the remaining disputed claim terms, "fire-rated," "specified fire rating," and "compressible insulation material" I understand the Court has deferred ruling on these terms. In my Opening Report, I opined that the disputed claim terms, "fire-rated," "specified fire rating," and "compressible insulation material" are indefinite. Those opinions remain unchanged and are incorporated herein. However, to the best of my ability that I understand DuraSystems' proposed constructions of the disputed terms, I have applied those constructions as set forth below:

     i.    "fire rated" – "rated for fire resistance with reference to its ability to withstand a standard fire resistance test."

     ii.    "specified fire rating" – "the fire resistance rating for which the module fire-rated exhaust duct assembly will be listed, such as UL 2221 and ASTM E2336 standards."

     iii.    "compressible insulation material" – "insulation material whose thickness changes under the weight of the inner duct."

29.     I have been asked to apply and have applied the constructions adopted by the Court in the Claim Construction Order (Exhibit 2) for purposes of this report. I have complied with this request.

## VI.     TECHNOLOGY OVERVIEW

30.     I have provided relevant background information on the technology of '569 Patent in Paragraphs 52-71 of my Opening Report and incorporate by reference that technology background information herein.

## VII.     ACCUSED PRODUCT

31.     Founded in 1944 and based out of Buda, Illinois, Van-Packer sells chimney, venting, and kitchen ventilation products.[1]  Van-Packer's product line has steadily increased over

---

[1] VP_0029849-53

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

the years to include chimneys to handle applications in all aspects of the commercial and industrial fields and are UL/ETL listed designed to handle any specific operating conditions.

32.     Van-Packer Model GRZ Grease Duct System ("GRZ Duct") is a rectangular, zero clearance, double-wall, fire-rated grease duct. Van-Packer's GRZ  Duct is an industry leader for double wall pre-fabricated grease duct systems and is the first rectangular grease duct listed to UL 2221 for zero clearance applications.

33.     The Van-Packer GRZ Duct met the test requirements to be marketed as a UL 1978 and UL 2221 listed duct:



| UL 1978 Rectangular Duct Mechanical Testing - Compression (Section Profile, Flange, Plate Support Assembly) | | | |
|---|---|---|---|
| Drawing:  46-TEST | Date Conducted: 10/25/16 | By: BILL SIMS   Witnessed: BARRY BADDERS | |
| Duct Size | Force to Be Applied | Pass/Fail | Load to Failure (Demonstration) |
| 06" x 36" | 2500 PSI | PASS | 2900 PASS |
| 24" x 36" | 2900 PSI | PASS | N/A |
| 36" x 36" | 2900 PSI | PASS | N/A |

Figure 1. UL 1978 mechanical test results.[2]

---

[2] VP_0027624

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

| Table 6. Test Observations of 2000 °F - Model GRZ grease duct insulated with Morgan Thermal Ceramics Superwool Plus | |
| --- | --- |
| **TIME (min:s)** | **OBSERVATIONS** |
| 00:00 | 2000 °F temperature requirement obtained, start of test period, October 27, 2016 at 11:30 a.m. |
| 05:00 | No Visible change to the exposed duct assembly. Condition A temperature limitations remained compliant. |
| 10:00 | No Visible change to the exposed duct assembly. Condition A temperature limitations remained compliant. |
| 15:00 | No Visible change to the exposed duct assembly. Condition A temperature limitations remained compliant. |
| 20:00 | No Visible change to the exposed duct assembly. Condition A temperature limitations remained compliant. |
| 25:00 | No Visible change to the exposed duct assembly. Condition A temperature limitations remained compliant. |
| 30:00 | End of test. |

Figure 2. UL 2221 internal fire test results.[3]



Figure 3. Photograph of a Van-Packer GRZ duct being tested at Intertek.[4]

34.     I conducted a physical examination of an example GRZ Duct which included two GRZ duct sections, ceramic insulation strip, metal draw band, and the fasteners and sealant required for joint assembly. Select images from that examination can be seen in Figure 4.

---

[3] VP_0027603
[4] VP_0027575

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER



(a)                                (b)                                (c)

Figure 4. A Van-Packer GRZ Duct section top Perspective View (a) and side perspective view (b) and draw band for covering the joint (c).

35.     I performed a joint assembly of a GRZ Duct Section per the installation instructions[5] which involved 1) inspecting the product for deformities, 2) clearing the flanges of the liner flanges, 3) applying a continuous bead of sealant to the liner flange as shown in Figure 5(A), 4) joining the liner flanges together and fastening the sections together using bolts/nuts as seen in Figure 5(B-C), 5) wrapping the assembled joint with ceramic insulation strip as shown in Figure 5 (D), and 6) placing the draw band around the joint and fastening the band closed using screws and nuts as seen in Figure 5 (E-F).

---

[5] Model GRZ  Zero Clearance Grease Duct Installation Guidelines, https://vpstack.com/wp-content/uploads/2021/08/GRZ-Installation-Instructions-081021.pdf

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER



Figure 5. Joint Assembly of the Van-Packer GRZ duct

## VIII.   THE PATENT-IN-SUIT

### A.   Subject Matter of the '569 Patent

36.     The '569 Patent (Exhibit 3) entitled "Fire-Rated Modular Duct Assembly and Improvements Therein," was filed on October 10, 2013, and issued on July 17, 2018. The '569 Patent relates to a modular fire-rated exhaust duct system, i.e., a system where exhaust duct sections can be put together in one exhaust duct run.[6] Figure 6 from the '569 Patent (reproduced below) provides an illustrative embodiment of these concepts, in which a plurality of exhaust duct

---

[6] '569 Patent at 2:22-23.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

sections or modules 110, indicated individually by references 110 a and 110 b, as shown in FIG. 6 are connected or coupled together with a mechanical joint. Thermal spacers may be positioned along the space between the outer casing panels and the inner metallic liner to provide additional support and maintain the space or separation for the insulating material:



Figure 6. Reproduction of Fig. 6 from the '569 Patent. The thermal spacers are shown in red.

37.     Figure 5b of the '569 Patent provides an illustrative embodiment of these concepts, where the thermal spacers 420 (highlighted in red in the reproduction of Figure 5b below) stay in the desired position for supporting the outer casing panels 310 and maintaining the gap or void:

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER



Figure 7. Reproduction of Fig. 5b from the '569 Patent. A thermal spacer is shown in red.

### B.     Level of Skill in the Art

38.     I also incorporate by reference my understanding of the level of skill that a POSITA would have from my opening report (paragraph 45).

39.     Today, as well as at the relevant time frame, my qualifications meet and/or exceed the requirements for a POSITA. I am an expert, but understand the knowledge and practice of a POSITA as of the earliest possible priority date because I interacted with numerous individuals who would have fallen within the definition of a POSITA, set forth above, particularly through my work as a consulting engineer in the field of mechanical engineer and as a fire investigator. Whenever I state "my opinion" in this report, it is an opinion from a POSITA's viewpoint.

### C.     Asserted Claims

40.     It is my understanding that DuraSystems asserts claims 1, 3, 6, 10-13, 16 and, 19-20 of the '569 Patent (the "Asserted Claims of the '569 Patent").

### IX.     STATEMENT OF, AND BASIS FOR, NON-INFRINGEMENT OPINIONS

41.     This report reviews the Patent-in-Suit, identifies claims that Plaintiff alleges are infringed, and provides a response to those infringement allegations, showing that infringement

did not take place with regards to those claims. As I explain in greater detail below, the GRZ Duct does not meet all of the limitations of the claims discussed below.

42.     Throughout his report, Mr. Crimi provides annotated photographs of two different exhaust ducts and cites them as both being the GRZ Duct. However, based on my own analysis, including a physical inspection of the GRZ Duct, as well as my communications with Van-Packer, one of the ducts cited by Mr. Crimi is, in fact, not the GRZ Duct. Even more confusing, this cited duct (example below) is not even a Van-Packer product.[7]  In his analysis of multiple claim elements of the independent claims of the '569 Patent, Mr. Crimi only cites photographs of the incorrect duct. Therefore, not only does Mr. Crimi fail to analyze and offer opinions concerning the GRZ Duct with respect to each and every claim of the '569 Patent, his analysis is based on an unidentified product that is neither a GRZ Duct, nor even a Van-Packer product.



Figure 8. Photograph of Unidentified Duct System Cited in Mr. Crimi's Report, Pg. 9

---

[7] *See* Ex. 4 for a detailed analysis showing the cited duct is not the Van-Packer GRZ Duct.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

### A.  The '569 Patent

#### 1.  Claim 1

43.  Independent Claim 1 recites:

A modular fire-rated exhaust duct assembly comprising:

- each of said exhaust duct modules having an inner duct liner and an outer casing, and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing;

- a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of each of said exhaust duct modules being configured for receiving said first exterior flange connector;

- a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of each of said exhaust duct modules being configured for receiving said second exterior flange connector;

- said first and said second exterior flange connectors being configured to form a field assembly junction for coupling respective ends of said exhaust duct modules to form a single exhaust duct run; and

- a joint encasement section configured to be field connectable to each of said exhaust duct modules and encase said junction.

44.  Independent claim 1 requires a "modular fire-rated exhaust duct" that includes "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship […] said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." The Court has adopted the construction that "thermal spacers thermally isolating" means "components that maintain a space between the inner duct liner and outer casing that limit the amount of heat conducted through the components so that they do not create fail

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

points on the inner duct liner or outer casing during fire rating testing." Additionally, the Court

notes "[t]he intrinsic evidence shows thermal spacers themselves thermally isolate."[8]

45.     I have analyzed a physical sample of the GRZ Duct and performed computational

heat transfer modeling of the GRZ Duct, as discussed in more detail below, and determined that

the structures alleged by DuraSystems to be "thermal spacers" (metal strips) in the GRZ Duct do

not "limit the amount of heat conducted through the components" and are therefore not a "thermal

spacers" as required by Claims 1, 10 and 16 of the '569 Patent.

46.     Mr. Crimi points to Van-Packer's pending patent application, instead of the GRZ

Duct itself, as the basis for the "metal strips" in the GRZ Duct being made of metal. The pending

patent application does describe what the "metal strips" are made of. In fact, based on my

inspection of the GRZ Duct, the "metal strips" in the GRZ Duct are made from the same metal as

the inner duct liner and the outer casing, i.e. stainless steel. A POSITA would be keenly aware that

steel is a thermal conductor, not a thermal isolator and therefore does not constitute a "thermal

spacer." Additionally, the portion of Van-Packer's pending patent application that Mr. Crimi cites

acknowledges that the metal strips allow "the insulation to absorb heat away from the inner liner."

This further illustrates that in the GRZ Duct, the insulation is what thermally isolates the "inner

duct liner from said outer casing" as opposed to the metal strips.

47.     Additionally, Mr. Crimi states "[t]he thermal spacers limit the transfer of heat

sufficiently to avoid creating fail points during fire rating testing as demonstrated by virtue of the

fact that the GRZ grease duct system has been tested and listed for a two-hour fire rating [...]."[9]

However, Mr. Crimi does not conduct any testing of his own or cite to any technical material in

---

[8] Ex. 2, pg. 22
[9] Crimi Report, pg. 17.

his report supporting the argument that the metal strips' contribute to the GRZ Duct passing a fire rating test.

48.     Furthermore, Mr. Crimi ignores the fact that, within the GRZ Duct, there is a tolerated amount of heat transferred between the inner duct liner and outer casing, via the metal strips. Illustrated below, there is a tolerated amount of heat conducted, via the metal strips, from the inner duct liner to the outer casing which is illustrated by the red dots on the outer casing. Because the metal strips in the GRZ Duct do not limit the amount of heat transferred, and instead increases the amount of heat transferred compared to the amount of heat transferred in the absence of the metal strips (ambient conditions), the ability to limit the transfer of heat sufficiently to avoid creating fail points during fire rating testing is not attributable to the metal strips in the GRZ Duct. In fact, as illustrated in Figure 10 below, more thermal isolation could be achieved if the metal strips were not present in the GRZ Duct.

49.     As noted above, the Court stated that the "thermal spacers themselves thermally isolate." As shown below, the thermal spacers themselves are not thermally isolating. Rather, the insulation that occupies space in the gaps in the metal strips, is what limits the transfer of heat. As noted above, the metal strips in the GRZ product allow "the insulation to absorb heat away from the inner liner." This further illustrates that in the GRZ Duct, the insulation is what thermally isolates the "inner duct liner from said outer casing" as opposed to the metal strips, which is what would be necessary to find infringement based on the Court's construction.

50.     In my opinion, the accused metal strips in the GRZ Duct conduct heat, rather than limit the transfer of heat between the inner duct liner and the outer casing. This is based on my understanding of the heat transfer properties of steel and the geometry of the GRZ Duct. This opinion is further supported by the results of computational heat transfer modeling.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

51.     Exponent developed a steady state, computational heat transfer model to simulate the GRZ Duct undergoing a simulated fire condition inside the inner duct. The model was developed using Siemens STAR-CCM+, a Multiphysics software package. The GRZ duct model dimensions were taken from the inspected exemplar duct section described above. The inner duct boundary conditions reflect a flow of hot air with a temperature of 1500°F. The internal flow convection coefficient[10] is based on the thermal properties of air[11], air flow temperature of 1500°F, and the minimum volumetric flow rates recommended by NFPA 96 (2011).[12] The duct outer surface boundary conditions reflect a duct in a quiescent ambient environment of 60°F[13]. The thermal properties of the metal duct are based on standard reference tables for stainless steel[14] and the model assumes that the ceramic fiber insulation[15,16] fills the empty spaces between the inner duct and the outer duct including the areas between the joint and the draw band. A symmetry boundary condition is enforced at the top opening and bottom opening of the duct, simulating a scenario where many sections are connected together to create a long duct.

---

[10] Dittus-Boelter equation for convection correlations in noncircular tubes, Sections 8.5 and 8.6, Bergman, Theodore L., Incropera, Frank P., DeWitt, David P., and Lavine, Adrienne S., Fundamentals of Heat and Mass Transfer, John Wiley & Sons, 2011.
[11] Table A.4, Bergman, Theodore L., Incropera, Frank P., DeWitt, David P., and Lavine, Adrienne S., Fundamentals of Heat and Mass Transfer, John Wiley & Sons, 2011.
[12] 8.2.1.1, NFPA 96, 2011.
[13] Churchill and Chu correlation, Bergman, Theodore L., Incropera, Frank P., DeWitt, David P., and Lavine, Adrienne S., Fundamentals of Heat and Mass Transfer, John Wiley & Sons, 2011.
[14] Stainless Steel Material Property Data, www.matweb.com/search/DataSheet.aspx?MatGUID=abc4415b0f8b490387e3c922237098da&ckck=1.
[15] Ceramic Fiber Properties, Average Physical Properties, www.azom.com/article.aspx?ArticleID=10382
[16] Typical Fiberfrax Blanket and Mat Properties, www.thermaxxjackets.com/products/insulation-materials/ceramic/



Figure 9. Model Boundary Conditions. Insulation and draw band not shown for clarity of view.

52. The model was run twice, first for the Van-Packer GRZ product in its original configuration having metal spacers and a second time for a modified GRZ product without the metal spacers. The results of the model are shown below in Figure 10.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**



Figure 10. Temperature contours of the Van-Packer GRZ Duct with metal spacers(left) and without the metal spacers(right) undergoing an internal hot air flow of 1500°F.

53.     Results show that when the metal spacers are present in the GRZ duct (Figure 10, left) they conduct heat from the inner duct to the outer duct surface. The inner duct and metal spacers are at elevated temperatures compared to the outer enclosure. There are visible hot spots on the outer duct surface with temperatures as high as ~260°F that correspond to where the metal spacer bridges between the inner duct and the outer duct surface. A scenario under the same conditions but without metal spacers (Figure 10, right) does not produce the same visible hot spots on the outer duct surface and the temperature is more uniform across the surface with a maximum temperature only reaching 185°F. The analysis shown above was performed with an internal temperature of 1500 °F. Qualitatively similar results are obtained for higher or lower temperatures.

54.     Therefore, the metal spacer of the GRZ Duct cannot be considered a "thermal spacer thermally isolating." It is my opinion that Van-Packer's GRZ Duct product does not literally infringe claim 1 of the '569 Patent.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

55.     Mr. Crimi does not provide an opinion that the GRZ Duct infringes any claims of the '569 under the doctrine of equivalents. It is therefore also my opinion that there is no evidence to support and Plaintiff has not shown, that the GRZ Duct infringes any element of claim 1 of the '569 Patent under the doctrine of equivalents. In the event Mr. Crimi advances a theory of infringement under the doctrine of equivalents, I reserve the right to right to respond to such theory.

56.     I also understand that statements and amendments made by applicants in response to prior art rejections during prosecution can limit the application of the doctrine of equivalents. I have reviewed the prosecution history of the '569 Patent, and importantly, on December 29, 2016, in response to prior art rejections, the applicants amended claim 1 to recite, "said one or more thermal spacers thermally isolating said inner duct liner from said outer casing…"[17] In doing so, the applicants argued "the thermal spacer[] is configured to prevent the thermal transfer of heat, e.g. due to a grease fire, from the inner duct to the outer casing."[18] I understand that under the theory of prosecution history estoppel, due to this limiting amendment and associated statements made to the Examiner, Mr. Crimi is not able to assert infringement of the "thermal spacer" element under a theory if doctrine of equivalents by improperly attempting to regain the scope that DuraSystems surrendered during prosecution.

### 2.     Claim 3

57.     Claim 3 depends from claim 1, and accordingly requires all of the limitations of claim 1. I incorporate by reference all of my statements above regarding claim 1 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 3 of the '569 Patent.

### 3.     Claim 6

---

[17] December 29, 2016, Response to Final Office Action dated September 30, 2016.
[18] *Id.*

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

58.    Claim 6 depends from claim 1, and accordingly requires all of the limitations of claim 1. I incorporate by reference all of my statements above regarding claim 1 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 6 of the '569 Patent.

### 4.    <u>Claim 10</u>

59.    Independent Claim 10 recites:

An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:

- an inner duct liner formed with a generally rectangular cross-section;

- an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving an insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing;

- a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector;

- a second exterior flange connector, said second exterior flange connector being joined directly to one end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and

- said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly.

60.    Similar to Claim 1, Claim 10 requires "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship […] said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." I incorporate by reference all of my statements above regarding claim 1 of the '569 Patent.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

61.     For the same reasons discussed above, the metal spacers of the GRZ Duct cannot be considered a "thermal spacer thermally isolating." It is my opinion that Van-Packer's GRZ Duct product does not literally infringe Claim 10 of the '569 Patent.

62.     Mr. Crimi does not provide an opinion that the GRZ Duct infringes any claims of the '569 under the doctrine of equivalents. It is therefore also my opinion that there is no evidence to support and Plaintiff has not shown, that the GRZ Duct infringes any element of claim 10 of the '569 Patent under the doctrine of equivalents. In the event Mr. Crimi advances a theory of infringement under the doctrine of equivalents, I reserve the right to right to respond to such theory.

63.     I also understand that statements and amendments made by applicants in response to prior art rejections during prosecution can limit the application of the doctrine of equivalents. I have reviewed the prosecution history of the '569 Patent, and importantly, on December 29, 2016, in response to prior art rejections, the applicants amended claim 10 to recite, "said one or more thermal spacers thermally isolating said inner duct liner from said outer casing…"[19] In doing so, the applicants argued "the thermal spacer[] is configured to prevent the thermal transfer of heat, e.g. due to a grease fire, from the inner duct to the outer casing."[20] I understand that under the theory of prosecution history estoppel, due to this limiting amendment and associated statements made to the Examiner, Mr. Crimi is not able to assert infringement of the "thermal spacer" element under a theory if doctrine of equivalents by improperly attempting to regain the scope that DuraSystems surrendered during prosecution.

---

[19] December 29, 2016, Response to Final Office Action dated September 30, 2016.
[20] *Id.*

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

### 5.    <u>Claim 11</u>

64.    Claim 11 depends from claim 10, and accordingly requires all of the limitations of claim 10. I incorporate by reference all of my statements above regarding claim 10 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 11 of the '569 Patent.

### 6.    <u>Claim 12</u>

65.    Claim 12 depends from claim 11, which depends from claim 10, and accordingly requires all of the limitations of claim 10. I incorporate by reference all of my statements above regarding claim 10 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 12 of the '569 Patent.

### 7.    <u>Claim 13</u>

66.    Claim 13 depends from claim 12, which depends from claim 11, which depends from clam 10, and accordingly requires all of the limitations of claim 10. I incorporate by reference all of my statements above regarding claim 10 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 13 of the '569 Patent.

### 8.    <u>Claim 16</u>

67.    Independent Claim 16 recites:

An exhaust duct module configured to be assembled in the field to form a fire-rated exhaust duct assembly, said exhaust duct module comprising:

- an inner duct liner formed with a generally rectangular cross-section;

- an outer casing formed with a generally rectangular cross-section and being sized to substantially surround said inner duct liner and a void being formed between at least a portion of space between said inner duct liner and said outer casing, said void being configured for receiving a compressible insulation material, and further including one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship so that said compressible insulation material occupies said void, said one or more thermal spacers thermally isolating said inner duct liner from said outer casing;

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

- a first exterior flange connector, said first exterior flange connector being joined directly to one end of said inner duct liner, and one end of said exhaust duct module being configured for receiving said first exterior flange connector;

- a second exterior flange connector, said second exterior flange connector being joined directly to another end of said inner duct liner, and another end of said exhaust duct module being configured for receiving said second exterior flange connector; and

- said first exterior flange connector and said second exterior flange connector being configured to be field attachable to couple another exhaust duct assembly

68.    Similar to Claims 1 and 10, Claim 16 requires "one or more thermal spacers configured to maintain said inner duct liner and said outer casing in a spaced relationship […] said one or more thermal spacers thermally isolating said inner duct liner from said outer casing." I incorporate by reference all of my statements above regarding claim 1 and 10 of the '569 Patent.

69.    For the same reasons discussed above, the metal spacers of the GRZ Duct cannot be considered a "thermal spacer thermally isolating." It is my opinion that Van-Packer's GRZ Duct product does not literally infringe Claim 16 of the '569 Patent.

70.    Mr. Crimi does not provide an opinion that the GRZ Duct infringes any claims of the '569 under the doctrine of equivalents. It is therefore also my opinion that there is no evidence to support and Plaintiff has not shown, that the GRZ Duct infringes any element of claim 16 of the '569 Patent under the doctrine of equivalents. In the event Mr. Crimi advances a theory of infringement under the doctrine of equivalents, I reserve the right to right to respond to such theory

71.    I also understand that statements and amendments made by applicants in response to prior art rejections during prosecution can limit the application of the doctrine of equivalents. I have reviewed the prosecution history of the '569 Patent, and importantly, on December 29, 2016, in response to prior art rejections, the applicants amended claim 10 to recite, "said one or more

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

thermal spacers thermally isolating said inner duct liner from said outer casing…"[21] In doing so, the applicants argued "the thermal spacer[] is configured to prevent the thermal transfer of heat, e.g. due to a grease fire, from the inner duct to the outer casing."[22] I understand that under the theory of prosecution history estoppel, due to this limiting amendment and associated statements made to the Examiner, Mr. Crimi is not able to assert infringement of the "thermal spacer" element under a theory if doctrine of equivalents by improperly attempting to regain the scope that DuraSystems surrendered during prosecution.

### 9.   Claim 19

72.   Claim 19 depends from claim 16, and accordingly requires all of the limitations of claim 16. I incorporate by reference all of my statements above regarding claim 16 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 19 of the '569 Patent.

### 10.   Claim 20

73.   Claim 13 depends from claim 12, which depends from claim 11, which depends from clam 10, and accordingly requires all of the limitations of claim 10. I incorporate by reference all of my statements above regarding claim 16 of the '569 Patent. It is therefore my opinion that the GRZ Duct does not infringe claim 20 of the '569 Patent.

## X.   COMPRESSIBLE INSULATION MATERIAL

74.   In my opening report, I opined that the term "compressible insulation material" is indefinite. The word "compressible" is a term of degree and the specification provides no discussion as to the objective boundary, such as a numerical value, between what insulation is "compressible insulation material" and what is not. From a material perspective, all insulation is "compressible" because all materials are compressible to some degree when the amount of

---

[21] December 29, 2016, Response to Final Office Action dated September 30, 2016.
[22] *Id.*

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

pressure available is not a limiting factor. Thus, a POSITA must exercise their own subjective judgment in determining to what degree of a compressibility defines the metes and bounds of the claimed "compressible insulation material."

75.     The Colton Report discusses whether insulation used in Van-Packer's GRZ fire-fire-rated duct is compressible. Specifically, Dr. Colton performed two different elaborate test protocols to determine a fact well within a POSITA's knowledge that ceramic batt insulation is compressible. As acknowledged by Mr. Crimi, all materials are compressible to some degree.[23] The lengths that Dr. Colton went to determine that ceramic batt insulation is compressible further illustrates the indefiniteness of the term "compressible" as used in the '569 Patent.

76.     This dispute concerns a threshold question that needs to be addressed before analyzing whether the insulation utilized in the GRZ Duct is compressible. The issue is whether the '569 Patent provides objective boundaries to determine what insulation material is compressible and captured by the claim scope of the '569 Patent and what insulation material is not. The Applicant of the '569 Patent could have included the information and procedures that Dr. Colton relied on to determine in compressibility in the specification of the '569 Patent. However, the Applicant did not provide this information and as a result, a POSITA must exercise their own subjective judgment in determining to what degree of a compressibility defines the metes and bounds of the claimed "compressible insulation material."

77.     Furthermore, similar to Mr. Crimi, Dr. Colton cites to, and provides photos, of a duct and claims it is the Van-Packer GRZ Duct. However, for the same reasons discussed above in paragraph 43 this unidentified duct is not the GRZ Duct and, in fact, is not even a duct manufactured by Van-Packer.

---

[23] Crimi Tr. at 141:13.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**



Figure 11. Photograph of Unidentified Duct System cited in Dr. Colton's Report, Pg. 6

## XI.   <u>CONCLUSION</u>

78.    I may rely on visual aids, audio aids, and demonstrative exhibits that demonstrate the basis of my opinions. These aids and demonstrative exhibits may include, for example, claim charts, patent drawings, excerpts from patent specifications, excerpts from references identified herein, excerpts from deposition or other testimony, file histories, and diagrams or animations describing the technology relevant to the Patent-in-Suit and the prior art.

79.    This report reflects my opinion given in good faith with respect to the information available to me as of the date I executed it. I respectfully reserve my right to amend, change, or modify my opinion in any way if additional information becomes available. If amendments or supplements to this report are necessary, I will provide those in a timely manner.

## XII.   <u>SIGNATURE</u>

80.    I declare that all statements made of my own knowledge are true and that all statements made on information and belief are believed to be true, and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

March 11, 2022
Date

Timothy L. Morse, Ph.D.